United States Court of Appeals,

Fifth Circuit.

No. 93-8276.

In the Matter of E.C. HENDERSON and Phyllis Henderson, Debtors.

E.C. HENDERSON and Phyllis Henderson, Appellee,

v.

Lee BELKNAP, Appellant.

April 20, 1994.

Appeal from the United States District Court for the Western District of Texas.

Before POLITZ, Chief Judge, KING and DAVIS, Circuit Judges.

PER CURIAM:

E.C. and Phyllis Henderson (the Hendersons) filed a motion to avoid Lee Belknap's (Belknap) judicial lien on their homestead property pursuant to 11 U.S.C. § 522(f)(1). The bankruptcy court denied the motion. The district court reversed the bankruptcy court's decision. Belknap appeals. We affirm.

I. FACTS AND PROCEDURAL HISTORY

On October 26, 1990, Belknap obtained a Texas state court judgment against the Hendersons in the amount of $197,667.21. On November 29, 1990, Belknap filed an abstract of judgment in Caldwell County, Texas, on all of the Hendersons' real property in Caldwell County.

On June 19, 1991, the Hendersons filed for relief under Chapter 7 of the Bankruptcy Code. At the time of the filing of the bankruptcy petition, the Hendersons owned 131 acres of real property in Caldwell County, Texas (Caldwell County property). The

1

bankruptcy court determined that the Caldwell County property qualified as a rural homestead under Texas law.[1]

On June 17, 1992, the bankruptcy court denied the Hendersons a discharge under § 727 of the Bankruptcy Code. After the bankruptcy court denied the discharge, the Hendersons filed a motion to avoid Belknap's judicial lien, pursuant to § 522(f)(1), on their homestead property. The bankruptcy court denied the Hendersons' motion, and the Hendersons timely appealed to the district court, 155 B.R. 157.

On appeal to the district court, the district court concluded that the bankruptcy court had erred in dismissing the Hendersons' motion to avoid the judicial lien on their homestead. The district court determined that the "mere existence of a judgment lien, although not attaching to the exempt homestead, impairs the debtor's constitutional homestead exemption and, consequently, is avoidable under § 522(f)(1)." The district court reasoned that courts which have determined that § 522(f)(1) does not allow a debtor to avoid a judicial lien on homestead property because the lien has not attached offer a restrictive and unrealistic line of reasoning. According to the district court, the real and practical ramifications of a recorded judicial lien on all of the debtor's real property is that the lien places a "cloud" on the debtor's

---

[1]Texas law defines a rural homestead as follows: "for a family, not more than 200 acres, which may be in one or more parcels, with improvements thereon; or for a single, adult person, not otherwise entitled to a homestead, not more than 100 acres, which may be in one or more parcels, with the improvements thereon." TEX.PROP.CODE ANN. § 41.002 (Vernon Supp.1994).

title to the homestead property and, therefore, "impairs" the debtor's homestead exemption. Additionally, the district court determined that allowing a debtor to avoid a judicial lien on his homestead property furthers the Bankruptcy Code's important objective of allowing the debtor to gain a fresh start in his financial life. Finally, the district court reasoned that because Texas courts have consistently acknowledged that the homestead law is entitled to the most liberal construction, the Hendersons should be allowed to avoid the lien.

## II. STANDARD OF REVIEW

This court reviews findings of fact by the bankruptcy court under the clearly erroneous standard and decides issues of law de novo. *Haber Oil Co. v. Swinehart (In re Haber Oil Co.),* 12 F.3d 426, 434 (5th Cir.1994). "A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed.' " *Wilson v. Huffman (In re Missionary Baptist Found. of Am., Inc.),* 712 F.2d 206, 209 (5th Cir.1983) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

## III. DISCUSSION

Section 522(f)(1) of the Bankruptcy Code provides:

> Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—(1) a judicial lien[.]

In order for a debtor to avoid a lien on exempt property under §

3

522(f)(1), a debtor must show: (1) that the lien is a judicial lien; (2) that the lien is fixed against an interest of the debtor in property; and (3) that the lien impairs an exemption to which the debtor would otherwise be entitled. *Hart v. Hart (In re Hart),* 50 B.R. 956, 960 (Bankr.D.Nev.1985). In this case, both parties agree that Belknap has a judicial lien and that the Caldwell County property is the Hendersons' homestead. The district court determined that even if Belknap's judicial lien did not attach to the Hendersons' homestead, the lien impairs an exemption of the debtor, and is therefore voidable under § 522(f)(1). In support of this position, the district court primarily relied on *Robinson v. Robinson (In re Robinson),* 114 B.R. 716 (D.Colo.1990), and *In re Watson,* 116 B.R. 837 (Bankr.M.D.Fla.1990).

In *In re Robinson,* the Robinsons had filed for relief under Chapter 7 of the Bankruptcy Code and claimed their home as exempt under the Colorado homestead exemption. *In re Robinson,* 114 B.R. at 717. Charlotte Robinson had filed a judicial lien against the Robinsons' homestead. *Id.* The Robinsons filed a motion to avoid Charlotte Robinson's judicial lien pursuant to § 522(f)(1). The bankruptcy court determined that the lien did not impair the Robinsons' homestead exemption and thus the Robinsons could not avoid the lien because "a judgment lien does not automatically attach to real property in Colorado." *Id.* at 717-18. The district court reversed the bankruptcy court's determination, reasoning that

> [w]hile in the State of Colorado, exemptions to the bankruptcy [e]state are governed by state law, the availability of lien avoidance provisions is governed by federal law. In this case, it makes little sense to deny the debtors access to the

4

§ 522(f)(1) lien avoidance provisions because of the vagaries of Colorado law under which a judicial lien does not attach to homestead property. To do so would deny the intent of the Bankruptcy Code in providing the debtors a fresh start and would leave debtors and creditors in limbo as to the status of judicial liens post-bankruptcy.

*Id.* at 720. Likewise, in *In re Watson,* the court held that the mere existence of a judicial lien impaired the homestead exemption and was therefore voidable under § 522(f)(1) because "any potential enforcement of a judgment lien in the future is a present impairment of the exemption." 116 B.R. at 838-39. The courts in *In re Robinson, In re Watson,* and the instant case determined that whether the judicial lien "fixed" on the debtor's exempt property was irrelevant to the inquiry of whether the debtor could utilize § 522(f)(1) to avoid a judicial lien. Rather, the courts concentrated solely on whether the lien's mere existence "impaired" the debtor's homestead exemption.

We do not agree that whether the judicial lien "fixed" is irrelevant to whether a debtor can utilize § 522(f)(1). Section 522(f)(1) clearly provides that the debtor may "avoid the fixing of a lien on an interest of the debtor" in exempt property "to the extent that such lien impairs an exemption." *See Farrey v. Sanderfoot,* 500 U.S. 291, ----, 111 S.Ct. 1825, 1828, 114 L.Ed.2d 337 (1991) (stating that § 522(f)(1) allows the debtor to avoid the fixing of a lien, i.e., the fastening of a liability, to an interest of the debtor in exempt property). We believe that the plain language of § 522(f)(1) allows a debtor to avoid a lien only when the judicial lien fastens a liability to *and* impairs the debtor's exempt property.

5

Therefore, the initial question that we must answer in this appeal is whether the Belknap's lien "fixes" against the Hendersons' homestead. Numerous Texas cases have stated that a properly abstracted judgment never attaches to a homestead so long as it remains homestead property. *E.g., Hoffman v. Love,* 494 S.W.2d 591, 593-94 (Tex.Civ.App.—Dallas 1973) ("[A] judgment, though duly abstracted, never fixes a lien on the homestead so long as it remains homestead."), *writ ref'd n.r.e. per curiam,* 499 S.W.2d 295 (Tex.1973); *Harms v. Ehlers,* 179 S.W.2d 582, 583 (Tex.Civ.App.—Austin 1944, writ ref'd) (noting that "no abstract of judgment lien could or did attach" to the parties' homestead). Section 52.001 of the Texas Property Code provides:

> Except as provided by Section 52.0011, a first or subsequent abstract of judgment, when it is recorded and indexed in accordance with this chapter, constitutes a lien on the real property of the defendant located in the county in which the abstract is recorded and indexed, including real property acquired after such recording and indexing.

TEX.PROP.CODE ANN. § 52.001 (Vernon Supp.1994).[2] Section 41.001 of the Texas Property Code provides that a homestead is "exempt from seizure for the claims of creditors." TEX.PROP.CODE ANN. § 41.001 (Vernon Supp.1994). Reading these provisions without the benefit

---

[2]Furthermore, article 16, section 50 of the Texas Constitution provides:

> Sec. 50. The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon.... No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon....

6

of Texas case law would certainly lead one to conclude that a judicial lien in Texas does fasten a liability on the homestead. At the same time, however, homestead property is exempt from the *enforcement* of a judicial lien. This reading of the relevant Texas statutes is supported by *Exocet, Inc. v. Cordes,* 815 S.W.2d 350 (Tex.App.—Austin 1991, no writ). In *Exocet,* the court explained that

> [w]hen an abstract of judgment is recorded and indexed in accordance with chapter 52 of the Property Code, it "constitutes a lien on the real property of the defendant located in the county ..., including real property acquired after such recording and indexing." Homestead property is not excluded from the scope and effect of this statute prescribing the legal consequences of perfecting a judgment lien by recording and indexing an abstract of the judgment. Section 41.001 of the Property Code provides, however, that a "homestead" is "exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property."
>
> Under these statutory provisions, a judgment lien is "perfected" or brought into existence against a debtor's property, by recording and indexing an abstract of the judgment in the county where the property lies. The debtor's homestead is not exempt from the perfected lien; rather, the homestead is exempt from any seizure attempting *to enforce* the perfected lien.

*Id.* at 352 (citations omitted). While we recognize that the issue may be open to debate, we conclude that under Texas law Belknap's judicial lien did "fix," i.e., fasten a liability against the Hendersons' homestead—albeit an unenforceable one.

Now that we have determined that a judicial lien does "fix" on a Texas homestead, we must decide whether the lien "impairs" the Hendersons' homestead exemption. Whether a judicial lien "impairs" a debtor's exemption under § 522(f) is a question of federal law. *City Nat'l Bank v. Chabot (In re Chabot),* 992 F.2d 891, 894 (9th

7

Cir.1993); *Heape v. Citadel Bank of Independence (In re Heape),* 886 F.2d 280, 282 (10th Cir.1989); *In re Kelly,* 133 B.R. 811, 813 (Bankr.W.D.Tex.1991). The district court determined that Belknap's judicial lien did "impair" the Hendersons' homestead exemption because the lien placed a "cloud" on the Hendersons' title. *See Packer v. General Motors Acceptance Corp.,* 101 B.R. 651, 653 (Bankr.D.Colo.1989) (holding that a judicial lien "impaired" the debtor's homestead exemption even though it did not attach because the lien "may leave debtor's title to real property clouded, lead to future litigation, prevent a closing, preclude title insurance, require posting of a bond, or otherwise impair or impede a debtor's right to deal with his real property post-petition in a free and unfettered manner"). Belknap counters by arguing that the Hendersons' homestead exemption cannot be "impaired" by his judicial lien because it cannot be enforced against the Hendersons' homestead property for so long as the Caldwell County property remains the Hendersons' homestead. In support of this argument, Belknap cites the decisions of several courts that have concluded that when a judicial lien does not attach to homestead property it does not "impair" the debtor's exemption and thus cannot be avoided because the lien cannot be enforced against a debtor's exempt property. *E.g., In re Cerniglia,* 137 B.R. 722, 727 (Bankr.S.D.Ill.1992) (determining that because the judgment lien did not attach to the debtor's homestead interest, there is no impairment of the debtor's exemption and no encumbering lien to be avoided); *Del Vecchio v. Atico Sav. Bank (In re Del Vecchio),* 101

B.R. 803, 805 (Bankr.S.D.Fla.1989) (noting that the "possibility that a judgment, which is *not* a lien might in the future "interfere' with a possible, but not presently contemplated, future sale of the debtors' Homestead, does not now "impair' the exemption already granted these debtors"); *In re Fry,* 83 B.R. 778, 779-80 (Bankr.D.Colo.1988) (holding that under Colorado law a judgment lien can never impair the debtor's homestead exemption because the judgment lien never attaches to the exempt property).

In determining that the Hendersons' homestead exemption was impaired, the district court further relied on *Tarrant Bank v. Miller,* 833 S.W.2d 666 (Tex.App.—Eastland 1992, writ denied). In *Tarrant Bank,* the defendant was a successor in interest to a judgment obtained against the plaintiffs for a delinquent car loan. *Id.* at 667. The judgment had been abstracted and filed of record in Brown County. *Id.* The plaintiffs then entered into a contract to sell their homestead, which was located in Brown County. *Id.* The plaintiffs had requested the defendant to grant them a partial release of its lien on their homestead property. *Id.* Because the defendant refused to release its lien on the plaintiffs' homestead, the title company refused to issue an owner's title policy and the plaintiffs were unable to complete the sale of their home. *Id.* The plaintiffs then sued the defendant for slander of title. *Id.* The defendant argued that there was no justiciable controversy between the parties because its lien against the homestead was unenforceable and could not create a cloud on the plaintiffs' title to the property. *Id.* The court disagreed with the defendant and

concluded that even though the lien was unenforceable, the lien could cast a cloud on the defendant's title. *Id.* at 667-68. The court concluded, therefore, that there was a justiciable controversy between the parties. *Id.* at 668.

We believe that Belknap's argument that the Hendersons' homestead property is not impaired because he can never enforce his judicial lien against the Hendersons' homestead as long as that property remains homestead property is a strong argument. It is clear to us that because the lien is unenforceable the Hendersons' homestead exemption is not "legally impaired." However, the term "impair" encompasses more than the idea of "legal" impairment. The term impair means "to weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner." BLACK'S LAW DICTIONARY 752 (6th ed. 1990). While we recognize that the Hendersons' homestead is not "legally impaired," the *Tarrant County* case has demonstrated to us that Belknap's judicial lien does impair the Hendersons' homestead exemption in a very real and practical sense. We acknowledge that the determination of whether a debtor's exemption is "impaired" is a question of federal law, but we do not believe that we must make this determination without the benefit of cases such as *Tarrant County,* which demonstrate the practical real life effects of an unenforceable judicial lien on a Texas homestead. Because Belknap's "unenforceable" lien creates a cloud on the Hendersons' title to their homestead, making it difficult if not impossible to obtain title insurance, we believe that Belknap's judicial lien "impairs," i.e., weakens, makes worse,

10

lessens in power, diminishes, and affects in an injurious manner, their homestead exemption.[3] *See In re Robinson,* 114 B.R. at 720 (holding that even though the creditor's judicial lien did not attach, the debtor could utilize § 522(f)(1) to avoid a judicial lien in order to provide the debtor with a fresh start and to fix the status of judicial liens post-bankruptcy); *In re Calandriello,* 107 B.R. 374, 375 (Bankr.M.D.Fla.1989) (concluding that the fact that the creditor's judicial lien is presently unenforceable against the debtor's homestead exemption does not mean that the debtor's homestead is not presently impaired because "[t]itle companies generally treat such judgments as a cloud on title to the homestead unless avoided in bankruptcy, satisfied, or otherwise removed").

IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[3]Belknap also argues that the district court erred in allowing the Hendersons to avoid his judicial lien because the Hendersons presented little or no evidence that the lien actually "impaired" their homestead exemption. Specifically, Belknap argues that the Hendersons have presented no evidence that they are contemplating a sale of the homestead or any other evidence that their homestead exemption is actually impaired. The Hendersons counter by arguing that this point of error has been waived by Belknap because he did not raise it in the district court. Even if Belknap has not waived this issue, it is irrelevant whether the debtors are presently contemplating a sale of their homestead because Belknap's judicial lien presently places a cloud on the Hendersons' title to their homestead.

11