IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-10442
Summary Calendar
_____


In The Matter Of: AVANTE REAL ESTATE, INC

                            Debtor

_____


MICHAEL B. SUFFNESS

                            Appellant,

        v.


JOHN PETROS, US Trustee; ROBERT NEWHOUSE, Trustee;
WILLIAM T NEARY

                            Appellees


_____

Appeal from the United States District Court
for the Northern District of Texas
(3:95-CV-410-T)
_____
(October 11, 1995)

Before KING, SMITH, and BENAVIDES, Circuit Judges.


PER CURIAM:[*]

---

[*]Local Rule 47.5 provides:  "The publication of opinions
that have no precedential value and merely decide particular
cases on the basis of well-settled principles of law imposes
needless expense on the public and burdens on the legal
profession."  Pursuant to that Rule, the court has determined

1

Attorney Michael Suffness ("Suffness") appeals various actions and orders of the bankruptcy court, including: (1) the December 6, 1994 Order Requiring Michael Suffness to Show Cause Why He Should Not Be Sanctioned Under Fed. R. Bankr. P. 9011; (2) the February 14, 1995 Order Sanctioning Michael Suffness, which enjoined Suffness from practicing in the bankruptcy court for the Northern District of Texas for six months ("the suspension order"); and (3) the January 25, 1995 Order Requiring Michael Suffness to Pay Retainer in to the Registry of the Court, which ordered the disgorgement of Suffness's retainer in the underlying bankruptcy appeal. The district court affirmed all three orders on April 17, 1995. Upon appeal to this court, we affirm.

I.   FACTUAL AND PROCEDURAL HISTORY

In May, 1994, John Petros ("Petros") and Ruben de la Torres ("de la Torres") formed Avante Real Estate, Inc. ("Avante") to own and operate two apartment complexes. Shortly thereafter, the working relationship between Petros and de la Torres deteriorated. On August 15, 1994, and August 25, 1994, respectively, Petros transferred, by special warranty deed, both apartment complexes to other entities owned or controlled by him. On August 26, 1994, Suffness, on behalf of Petros, wrote to Avante's bank, Central Bank and Trust, requesting that the bank freeze Avante's bank account.

that this opinion should not be published.

2

On September 8, 1994, Petros and Suffness caused Avante to file a voluntary chapter 7 bankruptcy petition. Petros signed the petition as the debtor's president, and Suffness signed the petition as the debtor's attorney. It is not clear if, and in fact doubtful that, de la Torres, Petros's partner, was ever served with notice of the bankruptcy filing. In the schedules and statement of affairs that the debtor filed with the chapter 7 petition, the debtor identified one bank account number -- that of an account at Central Bank and Trust -- and did not schedule any real property or other assets.

At the first creditors' meeting, held on October 12, 1994, Suffness appeared as debtor's counsel, but no one appeared on behalf of the debtor. The trustee agreed to continue the meeting until October 19, 1994, to allow the debtor an opportunity to appear. Prior to the scheduled October 19, 1994 meeting, Suffness contacted the chapter 7 trustee, Robert Newhouse ("Newhouse"), and informed him that the debtor would not be appearing at the meeting, and that Suffness intended to file a motion to dismiss the bankruptcy case.

On October 25, 1994, because Suffness had not yet filed a motion to dismiss the case, the United States Trustee, represented by Mary Frances Durham, filed a motion to dismiss the case and to require payment to trustee. In this motion, the United States Trustee requested the bankruptcy court to order the disgorgement of $200.00 of Suffness's $840.00 retainer and payment of that money to trustee Newhouse as compensation for his

3

time and effort, as well as to penalize Suffness for his failure to fulfill his stated commitment to file a motion to dismiss and to bear the costs of service of notice on the creditors. On October 27, 1995, Suffness filed a response to the United States Trustee's motion, urging that Newhouse seek compensation from funds in the debtor's account at Central Bank and Trust, and opposing the disgorgement of his retainer.

On November 21, 1994, the bankruptcy court held a hearing on the United States Trustee's motion to dismiss and require payment to trustee. At that hearing, the court heard from the United States Trustee, the bankruptcy trustee, and Suffness. The bankruptcy trustee, Newhouse, testified under oath regarding the poor condition of the Avante properties,[1] and his ultimate decision to abandon the assets of the estate. Newhouse also testified that he was unable to ascertain the amount of money in the Central Bank and Trust account, and that he was unable to retrieve the books and records of the rental properties. Next, Newhouse noted that he was never able to discern who was the true owner of the properties, because there appeared to be a dispute between Petros and de la Torres, who both claimed to be owners in full,[2] and because the properties had been transferred, prior to

---

[1]    Newhouse testified that one complex appeared to be in inhabitable condition and needed to be condemned, while the other, while in terrible condition, appeared to be operating, albeit without complete utilities.

[2]    The trustee testified that he had received a letter from de la Torres, containing an original signature and impression from a corporate seal, thus indicating that de la Torres also claimed ownership and active management of the

4

the filing of the bankruptcy, from Avante to two separate entities. Newhouse stated that it was his understanding that the funds in the Central Bank and Trust account were not accessible to the U.S. Trustee because they had been frozen pursuant to a state court order regarding the dispute between Petros and de la Torres.

Suffness did not cross-examine Newhouse. When the bankruptcy court asked Suffness about the assets of the debtor, and, in particular the amount of money in the Central Bank and Trust account, Suffness responded that he "ha[d] not been told what the amount in the account is." Suffness also was not able to relate to the court the whereabouts of his client, or even his confidence that his client, Petros, was in fact the sole owner of the debtor corporation. Finally, Suffness requested that, rather than through disgorgement of his fee, the bankruptcy trustee be compensated for his services by money from the Central Bank and Trust account.

At the conclusion of the November 21, 1994 hearing, the bankruptcy court orally entered the following orders: (1) the estate's interest in any real property was abandoned; (2) Central Bank and Trust was to appear and show cause why it should not turn over all funds on deposit for the debtor; (3) Suffness was to pay one half of his retainer ($420.00) into the registry of the court pending consideration of sanctions against him; and (4) Suffness was to appear at a future date to show cause why he

---

properties, and, in fact, possessed the corporate seal.

should not be sanctioned pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure. The court ordered the attorney for the United States Trustee to draft and submit a proposed order reflecting its oral ruling.

On December 6, 1994, the bankruptcy court entered the Show Cause Order it discussed at the November 21 hearing. That order, entitled "Order Requiring Michael Suffness to Show Cause Why He Should Not Be Sanctioned Under FRBP 9011," stated, inter alia, that the court "believes that the debtor through Mr. Suffness may have filed this bankruptcy for an improper purpose and, therefore, the court is considering levying sanctions against Mr. Suffness under Fed. R. Bank. Proc. 9011." Thus the court ordered that, "pending disposition of this case," Suffness pay one-half of his fee into the registry of the court. Finally, the court ordered that, in order to show cause why he should not be sanctioned, Suffness respond to the court regarding eight specific matters: (1) proof of ownership of the stock of the debtor; (2) the authority of Petros to sign the bankruptcy petition for the debtor; (3) proof of notice of the filing of the bankruptcy to the first lienholder on each property; (4) proof of notice of the filing of the bankruptcy to the Central Bank and Trust and its counsel; (5) failure to inform the court on November 21, 1994 that the funds held by Central Bank and Trust had been interpleaded in the Tarrant County Court of Law; (6) failure to inform the chapter 7 trustee of the state court proceedings  and failure to forward documents regarding the bank

6

accounts and state court proceeding to the trustee; (7) failure to include complete information regarding the two bank accounts at the Central Bank and Trust; and (8) the source and amount of any money paid to Suffness by the debtor, Petros, or any other party for any matter regarding the debtor, the bankruptcy, or any state court matters.

On that same day, the United States Trustee served notice of a forthcoming December 22, 1994 hearing. In order to obtain a correct service list, the Trustee contacted the attorney for Central Bank and Trust, Dabney Bassell ("Bassell"), who informed the United States Trustee that the bank had no knowledge of the bankruptcy filing, had interpleaded the funds from two bank accounts into the Tarrant County Court of Law on November 1, 1994, and had written Suffness four times prior to the November 21 hearing, asking Suffness to take some action regarding the accounts or else respond to the petition and interpleader, but had received no response. Upon learning of the interpleader, and reasoning that it would serve no purpose to serve the bank with a show cause order, the United States Trustee prepared a proposed turnover order directed to the Tarrant County Court of Law, which the court accepted as written.

Bassell filed an affidavit for the purpose of the December 22 hearing, and, after neither Suffness nor the debtor filed any objections, the court admitted it into evidence. In the affidavit, Bassell stated that an attorney in his firm, representing the bank, wrote both Suffness and Cram, the attorney

7

for de la Torres, on September 14, 1994, regarding the freeze on the bank accounts, and received no response. On October 17, 1994, Bassell wrote Suffness and Cram himself, and received a response from Cram but not from Suffness. Concluding that there continued to be a dispute as to the ownership of the account's funds, on November 1, 1994, the bank filed a Petition in Interpleader, and transmitted a copy of the petition to both Cram and Suffness. In order to resolve the interpleader issue, Bassell transmitted another letter to Cram and Suffness on November 11, 1994. Bassell stated that, at the time that he had written all of the letters described above, he had not been aware of the debtor's petition in bankruptcy. Thus, the attorney for the bank had contacted Suffness four times in writing prior to the November 21 hearing at which Suffness told the court that there was one, rather than two accounts at Central Bank and Trust, that Suffness was not aware of the amount of money in the account, and that the trustee should seek his payment out of the bank account.

Prior to the December 22, 1994 hearing, the United States Trustee designated several exhibits pursuant to the Northern District of Texas Local Rule 8.1 and Local Bankruptcy Rule 9032. Suffness, however, did not designate any witnesses or exhibits, even though the Show Cause Order setting the December 22 hearing required Suffness to respond to eight issues and also stated that the court would consider all state court pleadings and all correspondence between Suffness and Central Bank and Trust.

8

At the December 22 hearing, the United States Trustee introduced fourteen exhibits without objection, including the letters sent from the bank to Suffness. Suffness, testifying on his own behalf, admitted that he had received correspondence from Central Bank and Trust prior to the November 21, 1994, hearing, but claimed that he had not read the letters. He also admitted having received a copy of the petition for interpleader from the bank, but Suffness claimed that he mistook it for an application to intervene in the bankruptcy case. When the court asked Suffness why he had failed to include the rents, machinery and office equipment as assets of the estate, as well as why Suffness had represented the debtor's two bank accounts as if they consisted of a single bank account, Suffness responded that he did not know about the estate at the time of filing, but that he had filed the petition nonetheless, in a hasty attempt to protect the assets of the estate.

Petros also testified at the December 22, 1994 hearing. Petros admitted that he was involved in a dispute over the ownership and control of the Avante properties with de la Torres, that he had transferred both of the properties to entities he owned prior to the filing of the bankruptcy, and that he had filed the bankruptcy largely as an alternative to state court proceedings, as a "last resort" to gain control of the properties and keep them out of the hands of de la Torres.[3] After all of the

---

[3] Petros testified that he had "tried" to gain control of the properties through state court proceedings, but that de la Torres "kept avoiding [him] for almost forty-five days."

testimony had been heard, Suffness voiced an objection to the United States Trustee's exhibits. Because the exhibits had already been entered into evidence without objection, the bankruptcy court denied Suffness's request.

At the conclusion of the December 22 hearing, the bankruptcy court made its findings of fact and conclusions of law pursuant to 28 U.S.C. 157(b)(2)(A) and (O), and Bankruptcy Rule 7052. The court found that both Suffness and Petros filed the bankruptcy action for an improper purpose, namely, to cause harassment and delay of another person who was contesting Petros's control of the apartments. The court also found that the schedule of assets filed with the bankruptcy court case stated that the two properties were assets of the debtor at a time when the properties had already been deeded out of the estate by Petros himself, as evidenced by Petros's signature on the deeds. The court found that the purpose of the filing was to have the trustee pursue the properties and the rents, while Petros and Suffness enjoyed the benefits of the automatic stay provision of the Bankruptcy Code -- a purpose which is clearly improper.

Finally, the court stated that it was most troubled by its finding that Suffness had intentionally "misrepresented to th[e] Court knowledge that he had received form Mr. Bassell in at least three letters and two other documents, a petition and an order," when he failed to disclose that there were two rather than one account at Central Bank and Trust, and that the bank had in fact contacted him with information about the accounts.

10

Because of the intentional misrepresentations, the court invoked its duty to regulate the practitioners pursuant to 11 U.S.C. § 105, and, accordingly, ordered that, "[f]or the misrepresentation, Mr. Suffness will forfeit his fees in this case. The total of $840.00 will be paid to the trustee. Mr. Suffness is barred and enjoined from practicing in the Northern District of Texas Bankruptcy Court for six months from December 23." The court did not explicitly impose any sanctions pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure.

Suffness appealed the rulings of the bankruptcy court, including the Show Cause Order, the Suspension Order and the Disgorgement Order, to the district court, which affirmed. The district court concluded that the Show Cause Order was not a final order and therefore not appealable, and that the bankruptcy court did not err in sanctioning Suffness for his conduct.

We affirm.


II. STANDARD OF REVIEW

We review findings of fact by the bankruptcy court under the clearly erroneous standard and decide issues of law de novo. Henderson v. Belknap (In re Henderson), 18 F.3d 1305, 1307 (5th Cir. 1994); Haber Oil Co. v. Swinehart (In re Haber Oil Co.), 12 F.3d 426, 434 (5th Cir. 1994). Although the court of appeals benefits from the district court's consideration of the matter, the amount of persuasive force to be assigned to the district court's conclusion is entirely a matter of discretion with the

11

court of appeals.  <u>Heartland Fed. Sav. & Loan Ass'n v. Briscoe</u>
<u>Enters., Ltd., II (In re Briscoe Enters., Ltd., II)</u>, 994 F.2d
1160, 1163 (5th Cir. 1993).

A finding of fact is clearly erroneous when, although there
is enough evidence to support it, the reviewing court is left
with a firm and definite conviction that a mistake has been
committed.  <u>United States v. United States Gypsum Co.</u>, 333 U.S.
364, 395 (1948); <u>In re Henderson</u>, 18 F.3d at 1307.  If the trial
court's account of the evidence is plausible in light of the
record viewed in its entirety, the court of appeals may not
reverse even though convinced that, had it been sitting as the
trier of fact, it would have weighed the evidence differently.
<u>Anderson v. City of Bessemer City</u>, 470 U.S. 564, 573-74 (1985).


### III.  DISCUSSION

Suffness raises thirteen issues on appeal.  Specifically,
Suffness contends that the bankruptcy court made thirteen errors,
all of which and any of which require reversal.  None of
Suffness's arguments contains any merit.  They will be addressed
in turn.

First, Suffness argues that the bankruptcy court erred by
failing to give "proper FRBP 9011 notice" prior to "imposing
sanctions in the First Hearing."  In other words, Suffness
contends that the court's order at the conclusion of the November
21, 1994 hearing requiring him to deposit one-half of his
retainer into the registry of the court pending consideration of

12

sanctions constituted a sanction itself for which he was entitled prior notice. This contention is wrong. First, the court order requiring him to deposit the money did not constitute a sanction, but merely was an order -- as it states on its face -- requiring him to deposit money pending consideration of sanctions. Because Suffness was not sanctioned by means of that order, he was not due any notice. Second, even if Suffness were sanctioned, which he was not, he did receive notice. Suffness was given notice prior to the hearing that the court would hear argument on the United State's motion to dismiss and to require payment to the trustee. In this motion, filed with the bankruptcy court October 25, 1994 -- a month before the hearing -- the United States argued that Suffness should be required to disgorge part of his retainer to the trustee. Suffness responded to that motion by arguing that the trustee's payment should instead be drawn from the bank account at Central Bank and Trust. Thus, Suffness was under notice that his retainer was under risk of disgorgement by the court. Suffness's first argument fails on its face.

Second, Suffness argues that the court erred in failing to specify the reasons for the "sanction" at the conclusion of the November 21, 1994 hearing. Suffness again mischaracterizes the actions of the bankruptcy court. As discussed above, the court did not sanction Suffness at the November 21, 1994 hearing. And, even if the order requiring Suffness to pay half of his retainer into the registry of the court constituted a sanction -- which it did not -- the court gave adequate reasons for that order. The

13

court specifically stated that, based upon the representations made by the trustee, the attorney for the bank, the United States Trustee, and Suffness himself, it believed that Suffness might have filed the bankruptcy case for improper purposes. The court asked Suffness pointed questions about this issue at the hearing itself, and also ordered Suffness to respond to eight specific matters of concern, all regarding the propriety of the bankruptcy filing and the veracity of Suffness's statements to the court. Thus Suffness's second argument fails.

Third, Suffness argues that the bankruptcy court erred by concluding at the conclusion of the November 21, 1994 evidentiary hearing that Suffness had filed the bankruptcy case for an improper purpose. Once again, Suffness mischaracterizes the actions of the bankruptcy court on November 21, 1994. Although the court heard testimony at the November 21 hearing that may have justified such a conclusion, the bankruptcy court did not make the legal finding that Suffness had filed the case for an improper purpose until after considering the testimony and evidence presented by all parties, including Suffness, at the hearing on the subsequent Show Cause Order. As discussed above, at the conclusion of the November 21, 1994 hearing, the court only concluded that Suffness "may have filed this bankruptcy case for an improper purpose," (emphasis added) and reflected that conclusion in its written order filed December 6, 1994.

Fourth, Suffness argues that the court erred in imposing Federal Rule of Bankruptcy Procedure 9011 sanctions at the

14

conclusion of the November 21, 1994 hearing without first inquiring into the effect of the sanctions or standards for the imposition of the sanctions.  This argument fails because, as discussed above, the court did not impose sanctions at the conclusion of the November 21, 1994 hearing.

Fifth, Suffness argues that the bankruptcy court erred in executing the December 6, 1994 Show Cause Order, which, Suffness contended, "greatly exceeded the Order rendered in court at the conclusion of the [November 21, 1994] hearing."  Suffness's argument is futile, however, because, as the district court correctly concluded, the Show Cause Order was nothing more than a scheduling order, establishing a hearing date and matters to be considered at the hearing, and therefore was not a final order and therefore not appealable.  Even if it were appealable, however, the order was entered on December 6, 1994, and Suffness did not file his notice of appeal until January 31, 1995, at a time when the filing deadline had expired.  Also, Suffness did not seek permission to appeal an interlocutory order.  Thus, this court lacks jurisdiction to review the scheduling order.[4]

For the same reason, we lack jurisdiction to review Suffness's sixth argument, also challenging the legality of the

_____

[4]    It should be noted that, ironically, the Order to Show Cause is precisely the type and kind of order Suffness contends that due process requires prior to the imposition of sanctions. It gave Suffness notice that the court was considering sanctioning him, described specifically the sanctionable behavior suspected by the court, and gave Suffness ample opportunity to prepare a defense, provide evidence and testify on his own behalf.

bankruptcy court's December 6, 1994 Show Cause Order.

Seventh, Suffness argues that the bankruptcy court erred by adopting the documents and events that were presented by the attorney representing the United States Trustee.  Suffness did not object to the introduction of the items into evidence. We generally do not consider on appeal matters not presented to the trial court, and see no reason to make an exception in this case. Quenzer v. United States (In re Quenzer), 19 F.3d 163, 165 (5th Cir. 1993).  Furthermore, even though Suffness had been directed by means of the December 6, 1994 Show Cause Order to prepare and submit evidence on his own behalf in order to counter the assertions made by the United States Trustee, and in order to rebut the inferences reasonably drawn from the evidence submitted by the United States Trustee, he failed to introduce any documentary evidence.  Thus, the court committed absolutely no error by adopting the uncontested, unopposed evidence provided by the United States Trustee.

Eighth, Suffness contends that the bankruptcy court erred in finding that Suffness filed the bankruptcy for the improper purpose of causing the harassment and delay of another person. In making this argument, Suffness primarily attacks the credibility of the evidence put forth by the United States Trustee, as well as the testimony of the chapter 7 trustee and the attorney for the bank.  Suffness also repeated his own testimony and that given by Petros at the December 22, 1994 hearing.  The bankruptcy court, however, was more than qualified

16

to evaluate the credibility of witnesses, and it would be an abuse of our discretion to substitute our judgment for that of the factfinder's. Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985). Suffness's conclusory allegations are simply insufficient to establish that the bankruptcy court's findings were clearly erroneous. United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); Henderson v. Belknap (In re Henderson), 18 F.3d 1305, 1307 (5th Cir. 1994); Haber Oil Co. v. Swinehart (In re Haber Oil Co.), 12 F.3d 426, 434 (5th Cir. 1994).

Suffness's next three arguments fail for the same reasons as his eighth argument. Specifically, Suffness's ninth argument, that the bankruptcy court erred by holding that Suffness violated Rule 9011 of the Federal Rule of Bankruptcy Procedure by filing the case for an improper purpose, his tenth argument, that the bankruptcy court erred in concluding that Suffness violated Rule 9011 by making misrepresentations to the court concerning the bank account, and his eleventh argument, that the court erred in concluding that Suffness had abused the bankruptcy process, all must be rejected because the court had ample factual grounds on which to base its factual findings, as evidenced by the transcripts of the two hearings and the documents entered into evidence. As described in detail in part II, supra, the court had more than adequate factual grounds on which to base its decision to reject the testimony put forth by Suffness and Petros.

17

Twelfth, Suffness argues that the bankruptcy court erred in imposing sanctions at the conclusion of the December 22, 1994 hearing without inquiring into the effect of the sanctions or the standards for the imposition of the sanctions. This argument is meritless. The bankruptcy court has inherent power to guard the practice of attorneys who appear in that court. State Bar Rule 3.03; 11 U.S.C. § 105; Northern District of Texas Local Rule 13.2 (made applicable through Local Bankruptcy Rule 9050); Matter of Johnson, 921 F.2d 585, 586 (5th Cir. 1991). These powers are discretionary, and the bankruptcy court has broad authority to discipline attorneys and to award or disgorge fees paid in connection with bankruptcy proceedings. Matter of Prudhomme, 43 F.3d 1000, 1003-04 (5th Cir. 1995); In re Anderson, 936 F.2d 199, 204 (5th Cir. 1991); 11 U.S.C. §§ 327, 329, and 330(a)(2); Fed. R. Bankr. Proc. 2016(b) and 2017. It is common for a bankruptcy court to order disgorgement of fees in order to obtain compliance with a court order or punish misconduct of attorneys. Woods v. City Nat'l Bank & Trust Co. 312 U.S. 262, 268 (1941); Anderson, 936 F.2d at 204.

In this case, the court's sanction was reasonable, and Suffness has put forth no credible argument to establish that the bankruptcy court abused its discretion. In re Lawler, 807 F.2d 1207, 1211 (5th Cir. 1987). Given the fact that the bankruptcy court found that Suffness had filed the chapter 7 case for purely improper purposes -- in order to delay creditors and to settle a state law dispute over the ownership of the properties -- as well

18

as that Suffness had intentionally and deliberately misled the court on crucial information, the bankruptcy court's ultimate decision to require Suffness to disgorge his $840 retainer fee and to bar Suffness from practicing in the bankruptcy court for the Northern District of Texas for sixth months was reasonable.

Finally, Suffness argues that the bankruptcy court erred by failing to give proper notice of possible "section 105 or inherent court power sanctions" prior to imposing sanctions at the conclusion of the second hearing.  This argument is meritless.  The court's oral ruling on November 21, 1994 and the December 6, 1994 Show Cause Order both provided Suffness with notice and information regarding each of the issues the court was to consider at the December 22, 1994 hearing.  Specifically, Suffness was directed to bring proof of ownership of the stock of the debtor, evidence of Petros's authority to sign the chapter 7 petition, proof that he served notice of the bankruptcy filing to the secured creditors, and proof that he served notice of the filing on the bank.  If Suffness required more time to gather this information, he did not so indicate,  either by filing a motion to continue the hearing or for clarification of the court's Show Cause Order.  The court explicitly stated, both in court and through its December 6 Show Cause Order, that it had serious doubts as to the veracity of the representations Suffness had made, and was continuing to make, to the court.

Thus, the court gave Suffness ample opportunity to correct his misrepresentations to the court and to limit the damage to

creditors caused by his delay and misrepresentations.  Suffness nonetheless chose to make direct misrepresentations to the court, and cannot with a straight face argue that he did not have notice that he would be sanctioned for his misrepresentations.


IV.  CONCLUSION

For the reasons stated above,  we

AFFIRM.