**Jack W. CANNON, Appellant,**

v.

**Bonnie CANNON, Appellee.**

**No. 00–8292–CIV–JORDAN.**

United States District Court,
S.D. Florida,
Miami Division.

Oct. 31, 2000.

---

David Marshall Brown, P.A., Fort Lauderdale, FL, for Appellant.

Bonnie Cannon, West Palm Beach, FL, pro se.

### ORDER VACATING BANKRUPTCY JUDGE'S DECISION CONCERNING AVOIDANCE OF LIEN

JORDAN, District Judge.

Bonnie Cannon holds a $90,000 judgment lien on the homestead property of

her former husband, Jack Cannon. Mr. Cannon appeals from Bankruptcy Judge Steven Friedman's ruling that, pursuant to 11 U.S.C. § 522(f)(1)(A), he could avoid only $25,000 of the $90,000 lien. Because I conclude that Mr. Cannon cannot use § 522(f)(1)(A) to avoid Ms. Cannon's lien, Judge Friedman's ruling is vacated.

## I. The Underlying Dissolution Proceedings

Prior to marrying Ms. Cannon in 1973, Mr. Cannon purchased a home in Florida. The couple lived in that residence until their divorce in 1985. At the time of their separation, Mr. and Ms. Cannon had one minor child.

In the final judgment of dissolution, the state circuit judge made the following findings concerning the Cannons: (1) Ms. Cannon brought $25,000 into the marriage, had not worked outside of the home during the marriage, and was earning $4.50 an hour as a telephone receptionist; (2) Mr. Cannon had a net worth of about $300,000, including the marital residence, which was valued at $220,000 to $230,000; and (3) Ms. Cannon was entitled to permanent periodic alimony. The judge explained that he was "in a quandary about what to do with the marital residence" because, although Mr. Cannon had bought the residence prior to the marriage, Ms. Cannon should benefit from her contribution to the marriage. The judge stated that he would "attempt to do equity between the parties in this regard." See Final Judgment of Dissolution [D.E. 2, Document 17, Exh. A] at 3 (July 12, 1985).

The judge awarded primary physical custody of the couple's minor child to Ms. Cannon, with both parents having shared parental responsibility. The judge required Mr. Cannon to pay Ms. Cannon $450 a month for child support (until the child attained the age of 18) and $600 a month in permanent periodic alimony (until Ms. Cannon remarried). The judge also ordered Mr. Cannon to pay Ms. Cannon a total of $90,000 ($35,000 within 30 days and the remaining $55,000 within 2 years) as "equitable distribution." The judge decreed that the equitable distribution of $90,000 "act as a lien" against Mr. Cannon's interest in the marital residence, but otherwise denied Ms. Cannon's request for lump-sum alimony or equitable distribution of the residence itself. Id. at 4–5.

In an amended final judgment of dissolution, the judge reaffirmed that the parents would share parental responsibility, but awarded primary physical custody of the child to Mr. Cannon. The judge further ruled that the lien placed on Mr. Cannon's residence was "not subject to foreclosure" by Ms. Cannon. See Amended Final Judgment of Dissolution [D.E. 2, Document 17, Exh. B] at 1, 3 (Aug. 20, 1986).

Approximately 7 years later, the judge entered another order in the dissolution proceedings. See Order [D.E. 2, Document 23, Exh. A] (March 10, 1993). The judge noted that the Cannons' divorce had been hotly contested, and ruled that Mr. Cannon was in arrears on his child support payments (by $24,341) and had failed to pay Ms. Cannon the $90,000 in equitable distribution. The judge also explained that he had not previously allowed Ms. Cannon to foreclose on her lien because the child was living with Mr. Cannon during some periods of time at the marital residence, and stated that this rationale was no longer applicable because the child had become emancipated. The judge allowed Ms. Cannon to execute on the child support arrearage, but left open whether she should be able to execute on the $90,000 owed to her by Mr. Cannon. Id. at 2–5.

## II. The Bankruptcy Proceedings

In 1998, Mr. Cannon filed for bankruptcy under Chapter 7. In 1999, he sought to reopen his bankruptcy case so that he could file a motion to avoid Ms. Cannon's $90,000 lien on the marital residence—which was exempt homestead property—under 11 U.S.C. § 522(f)(1)(A). After Judge Friedman reopened the case, Mr.

Cannon filed a motion to avoid the lien. *See* Motion to Avoid Judicial Lien Impairing Exempt Homestead Property [D.E. 2, Document 17] (July 12, 1999).[1]

Judge Friedman held two hearings in September of 1999 on Mr. Cannon's motion. *See* Transcript of Hearing [D.E. 2, Document 35] (Sept. 2, 1999); Transcript of Hearing [D.E. 2, Document 34] (Sept. 21, 1999). At the second hearing, Mr. Cannon introduced the final judgment of dissolution and the amended final judgment of dissolution, and Judge Friedman heard argument from the parties.

Several months later, Judge Friedman issued an order granting in part Mr. Cannon's motion to avoid the $90,000 lien. *See In re Cannon,* 243 B.R. 153 (Bankr. S.D.Fla.2000). Judge Friedman, relying on cases like *In re Calandriello,* 107 B.R. 374, 375–76 (Bankr.M.D.Fla.1989), first concluded that although under Florida law Mr. Cannon's residence was homestead property which could not be encumbered by judgment liens, the $90,000 lien held by Ms. Cannon nevertheless impaired Mr. Cannon's homestead exemption and could therefore be avoided under § 522(f)(1)(A). *In re Cannon,* 243 B.R. at 155. Then, applying the Eleventh Circuit's decision in *In re Harrell,* 754 F.2d 902, 906 (11th Cir.1985), Judge Friedman ruled that of the $90,000 awarded to Ms. Cannon in the dissolution proceedings only $25,000—the amount of money that Ms. Cannon had brought into the marriage—could be considered a property settlement. The remainder, Judge Friedman found, was "best characterized" as rehabilitative alimony, and therefore constituted a support obligation of Mr. Cannon's. Accordingly, Judge Friedman held that Mr. Cannon

could avoid $25,000 of the lien, and that Ms. Cannon could continue to hold and maintain the remaining $65,000 lien against Mr. Cannon's homestead property. *In re Cannon,* 243 B.R. at 156.

Mr. Cannon moved for reconsideration, attaching the 1993 order entered by the state circuit judge. *See* Motion for Reconsideration [D.E. 2, Document 23] (Jan. 13, 2000). Judge Friedman denied the motion, explaining that he had followed *In re Harrell* and that his conclusion concerning the nature of the $90,000 lien was supported by various bankruptcy cases and authorities. *See* Order Denying Motion for Reconsideration [D.E. 2, Document 25] at 1–4 (Jan. 19, 2000).

### III. Mr. Cannon's Appeal

■■■ Mr. Cannon makes two principal arguments on appeal. First, he contends that Judge Friedman correctly applied § 522(f)(1)(A) to Ms. Cannon's $90,000 lien because that lien fixes a liability on the residence and impairs his exemption. Whether or not § 522(f)(1)(A) applies to Ms. Cannon's lien presents a question of law subject to plenary review. *See generally In re Englander,* 95 F.3d 1028, 1030 (11th Cir.1996) (district judge reviews bankruptcy judge's legal conclusions *de novo* ). Second, Mr. Cannon maintains that Judge Friedman incorrectly split the $90,000 "equitable distribution" award into a $25,000 property settlement portion and a $65,000 support portion. In Mr. Cannon's view, Judge Friedman should have entered an order avoiding the entire $90,000 lien. Judge Friedman's characterization of the $90,000 award also presents a question of law. *See In re Strickland,* 90 F.3d 444, 446 (11th Cir.1996) (whether an award constitutes "support" under 11

---

1. In relevant part, § 522(f)(1)(A) provides that a debtor "may avoid the fixing of a lien on an interest of the debtor in property to the extent that the lien impairs an exemption to which the debtor would have been entitled ... if such lien is a judicial lien, other than a judicial lien that secures a debt (i) to a ... former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse

or child in connection with a ... divorce decree[.]" Another subsection, § 522(f)(1)(A)(ii)(II), indicates that the label attached to the debt secured by the lien is not determinative, so that a "liability designated as alimony, maintenance, or support" must "actually" be a "liability in the nature of alimony, maintenance, or support."

U.S.C. § 523(a)(5) presents a question of federal law (informed by state law) and is reviewed *de novo*). I do not reach Mr. Cannon's second argument because I conclude that Ms. Cannon's lien is not of the type that can be avoided pursuant to § 522(f)(1)(A).

Under § 522(f)(1)(A), a debtor can seek to "avoid" the "fixing of" a judicial lien to the extent such a lien "impairs" exempt property. *See Farrey v. Sanderfoot*, 500 U.S. 291, 295–96, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991); *In re Lehman*, 205 F.3d 1255, 1256 (11th Cir.2000). It is undisputed that Mr. Cannon's residence constitutes exempt homestead property under Florida law, *see* Fla. Const. Article 10, § 4, and that Ms. Cannon's lien is a judicial one. The critical questions, then, are whether the lien "fixes" a liability on the residence and whether the lien "impairs" Mr. Cannon's homestead exemption. *See In re Henderson*, 18 F.3d 1305, 1308 (5th Cir.1994) ("the plain language of § 522(f)(1) allows a debtor to avoid a [judicial] lien only when the ... lien fastens a liability to and impairs the debtor's exempt property"). The first question—whether Ms. Cannon's lien fixes a liability on Mr. Cannon's residence—must be answered by reference to Florida law. *See id.* at 1308–09. *See also Owen v. Owen*, 500 U.S. 305, 314, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991); *In re Holloway*, 81 F.3d 1062, 1065 (11th Cir.1996). The second question—whether the lien impairs Mr. Cannon's homestead exemption—is a matter of federal law (taking into account the practical effects of the lien under Florida law). *See In re Holloway*, 81 F.3d at 1065; *In re Henderson*, 18 F.3d at 1309; *In re Heape*, 886 F.2d 280, 282 (10th Cir.1989).

## A. Whether the Lien "Fixes" on Mr. Cannon's Exempt Property

In *In re Henderson*, the Fifth Circuit, surveying Texas law, concluded that a judgment lien "fixed" against exempt homestead property for purposes of § 522(f)(1), and therefore could be avoided

by the debtors. Although under Texas law an abstracted judgment "never attache[d] to a homestead so long as it remain[ed] homestead property," certain Texas statutes and cases indicated that homestead property was not immune from perfected liens. Instead, homestead property was just immune from seizure or forced sale. Accordingly, the Fifth Circuit held that, while the issue "may be open to debate," the lien obtained against the debtors in that case "did 'fix,' i.e., fasten a liability against the [debtors'] homestead—albeit an unenforceable one." 18 F.3d at 1308–09.

In contrast to the Texas law surveyed by the Fifth Circuit, Florida law prohibits most judgment liens from fastening any type of liability against homestead property. Article 10, § 4(a)(1) of the Florida Constitution provides that homestead property "shall be exempt from forced sale under process of any court and no judgment, decree, or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement, or repair thereof, or obligations contracted for ... labor performed on the realty[.]" This broad language precludes a typical judgment for indebtedness (like the Cannons' final judgment of dissolution) from becoming a lien on homestead property.

Almost a century ago, the Florida Supreme Court held that "[n]o judgment is a lien on [homestead] property unless it come[s] within the exceptions of the Constitution," *Wilhelm v. Locklar*, 46 Fla. 575, 35 So. 6, 6 (1903), and nothing has changed since that pronouncement. Indeed, in *Ilkanic v. City of Ft. Lauderdale*, 705 So.2d 1371 (Fla.1998), the Florida Supreme Court recently rejected a claim that a statutory lien on homestead property for civil restitution violated Article 10, § 4, explaining that under the Constitution no such lien could even exist on such property: "[T]he civil restitution lien cannot be a cloud on homestead property." *Id.* at 1373 (quoting and approving *Demu-*

ra v. *County of Volusia,* 618 So.2d 754, 756 (Fla. 5th DCA 1993)). *See also Milton v. Milton,* 63 Fla. 533, 58 So. 718, 719 (1912) ("Judgments or decrees are liens upon the real estate of the defendants in the county where such judgments or decrees are rendered or recorded as required by the statutes. But no judgment or decree or execution shall be a lien upon homestead exempted property except for [those liens set forth in the Constitution]."); *Miskin v. City of Ft. Lauderdale,* 661 So.2d 415, 416 (Fla. 4th DCA 1995) ("[T]he mere recording of the [code enforcement board] order in the instant case does not constitute a cloud on Miskin's homestead property."). The language from *Demura,* which involved a lien against homestead property for unpaid fines, is instructive about the ineffectiveness of liens against Florida homestead property:

> We note that if the property is, indeed, homestead property, then the Demuras may sell it and ... there would be no lien on the property then in the hands of the purchasers. On the other hand, if the Demuras failed to invest the proceeds of that sale into another homestead within a reasonable period of time, those proceeds could be reached by creditors.... It is also true, of course, that if the Demuras were to retain ownership of the property but abandoned it as their homestead, [the fine] against them could then be enforced as a lien against the property.

618 So.2d at 756–57 (citations omitted).

Given the sweeping language of Article 10, § 4 of the Florida Constitution, and the interpretation of that provision by Florida courts, Ms. Cannon's $90,000 lien did not "fix" against Mr. Cannon's exempt homestead property, and therefore cannot be avoided under § 522(f)(1)(A). *See In re Bearden,* 204 B.R. 73, 74 (Bankr.N.D.Fla. 1996) ("While this court and most of the bankruptcy courts in this state have routinely granted motions to avoid judgment liens with respect to homestead in order to

mollify title insurers hesitant to insure title when there are outstanding judgments against the seller of homestead property, such 'comfort orders' should not be required under the law."). The Tenth Circuit, I note, has reached the same conclusion with respect to the effect of judgment liens on Colorado homestead property. *See In re Shafner,* 82 F.3d 426, 1996 WL 98809, at *2 (10th Cir.1996) ("[U]nder Colorado law, the judgments of appellees never became liens upon the debtors' homestead.... [R]esort to [§ ] 522(f) to avoid the judgment liens at issue is unnecessary because Colorado law prevented their attachment; therefore, the debtors' right to their homestead exemption is not jeopardized.... Because, in Colorado, the value of a homestead exemption is exempt from execution, the judicial liens have never attached.").

## B. Whether the Lien "Impairs" Exempt Property

"Described in its simplest terms," § 522(f)(1) "permits a debtor to wipe out the interest that a creditor has in particular property if the debtor's interest in that property would be exempt but for the existence of the creditor's lien or interest." 4 L. King, COLLIER ON BANKRUPTCY ¶ 522.11[1], at 522–76 (15th rev. ed.2000). *See Owen,* 500 U.S. at 310–11, 111 S.Ct. 1833 ("[A]sk not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which he would have been entitled but for the lien itself."). Bankruptcy judges in Florida have split on whether a lien like Ms. Cannon's "impairs" exempt homestead property and can be avoided under § 522(f)(1). *Compare, e.g., In re Lowe,* 250 B.R. 422, 425 (Bankr. M.D.Fla.2000) ("Any lien on homestead real property creates a cloud on the title and renders the title unmarketable. The cloud on the title clearly impairs the homestead exemption."), *with, e.g., In re Goodwin,* 82 B.R. 616, 617 (Bankr.S.D.Fla.1988) ("In Florida, a judicial lien which is presently unenforceable against exempt real

property does not impair the exemption."). As explained below, I find the rationale of cases like *In re Goodwin* more persuasive.

The Fifth Circuit held in *In re Henderson* that the term "impair," as used in § 522(f)(1), "encompasses more than the idea of 'legal' impairment. The term impair means 'to weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner.'" 18 F.3d at 1310 (quoting BLACK'S LAW DICTIONARY 752 (6th ed.1990)). The Fifth Circuit concluded that a judgment lien on Texas homestead property could be avoided under § 522(f)(1)(A) even though there was a "strong argument" that the "lien was unenforceable" and therefore did not legally impair the property. Because under Texas law such a lien nevertheless clouded the title to homestead property, the lien impaired the debtors' property and could be avoided. 18 F.3d at 1310–11 (discussing *Tarrant Bank v. Miller*, 833 S.W.2d 666, 667–68 (Tex.Ct.App.1992), *writ denied* (Feb. 11, 1993)).

Although the question of impairment must be decided as a matter of federal law, the Fifth Circuit's analysis demonstrates that it cannot be divorced from the principles of state law that apply to the lien sought to be avoided. In contrast to the Texas law analyzed in *In re Henderson,* and as explained earlier, Florida law does not recognize (and gives no effect to) a lien on homestead property (unless the lien is one of those listed in Article 10, § 4 of the Constitution). *See, e.g., Ilkanic,* 705 So.2d at 1373.

Against the backdrop of Florida law discussed above, it is difficult to see how Ms. Cannon's lien impairs Mr. Cannon's exemption for homestead property. The lien does not affect Mr. Cannon's ability to claim the residence as exempt property, has no legal effect with respect to Mr.

Cannon's homestead property, does not cloud Mr. Cannon's title, and cannot be enforced against anyone when Mr. Cannon sells the residence (so long as Mr. Cannon uses the proceeds to purchase another homestead). *See, e.g., Demura,* 618 So.2d at 756–57. To use the test articulated by the Supreme Court in *Owen,* 500 U.S. at 310–11, 111 S.Ct. 1833, Ms. Cannon's lien does not impair an exemption to which Mr. Cannon would have been entitled but for the lien itself. *See In re Sanders,* 39 F.3d 258, 262 (10th Cir.1994) ("The issue [of impairment] is further complicated in this case because in Utah a judgment lien never attaches to the homestead. The exemption takes priority over 'all the other encumbrances except the consensual security interests in the property.' Avoidance under § 522 is unnecessary because the lien does not fix upon the Utah exemption. Consequently, the Utah homestead is not impaired by a nonconsensual, nonpurchase money lien."). While Ms. Cannon's lien has not magically disappeared, it cannot and does not affect Mr. Cannon's homestead exemption for the residence, and the impairment of the exemption is all that § 522(f)(1)(A) is concerned with.

Although not raised by Mr. Cannon, I have considered the suggestion that § 522(f)(2),[2] enacted in 1994, now provides a general standard for determining whether a lien impairs an exemption. *See, e.g., In re Holland,* 151 F.3d 547, 548–50 (6th Cir. 1998); 4 COLLIER ON BANKRUPTCY ¶ 522.11[3], at 522–78 to 522–80. It seems to me, however, that § 522(f)(2) is best characterized as a provision for calculating the amount or extent of impairment once a lien has been held to impair an exemption. *See generally In re Lehman,* 205 F.3d 1255, 1256–58 (11th Cir.2000) (declining to read § 522(f)(2) literally because it would lead to an absurd result). In most cases the only issue may be the amount of the

---

2. In relevant part, § 522(f)(2) provides that "a lien shall be considered to impair an exemption to the extent that the sum of (i) the lien[,] (ii) all other liens on the property[,] and (iii) the amount of the exemption that the debtor could claim if there were no liens on the property, exceeds the value that the debtor's interest in the property would have in the absence of any lien."

lien that can be avoided, but that is certainly not the situation here.[3]

## IV. Conclusion

For the reasons set forth above, Mr. Cannon cannot avoid Ms. Cannon's $90,000 lien under § 522(f)(1)(A). As a result, Judge Friedman's order, which avoided

$25,000 of the lien, is vacated. This appeal is closed.

---

**3.** For Eleventh Circuit cases analyzing the amount of a lien that could be avoided prior to the 1994 enactment of § 522(f)(2), see *In re* *Holloway*, 81 F.3d at 1069–70, and *In re Wrenn*, 40 F.3d 1162, 1166–67 (11th Cir. 1994).