WILLIAM H. BUSH & CO. V. B. A. ADAMS *et ux.*

No. 14,395.    (84 Pac. 122.)

SYLLABUS BY THE COURT.

HOMESTEAD—*Intention to Occupy—Overt Act—Exemption.* A debtor in failing circumstances, being the head of a family, concluded to surrender to his creditors the property he then occupied as a homestead, and to move to, and make his home upon, another tract of land which he owned and which was so leased that he had a right to take possession of it at any time. He made such removal, after delaying it between four and five months in order to assist his creditors in realizing upon his property, having made a general assignment. Before he moved, and before he had done any act in pursuance of his purpose to move, a judgment was rendered against him by a justice of the peace, and a transcript of it was filed in the district court. *Held,* that the property in question was not exempt from sale upon an execution issued on such judgment.

Error from Franklin district court; CHARLES A. SMART, judge. Opinion filed January 6, 1906. Reversed.

*W. S. Jenks,* for plaintiffs in error.

*Gamble & Costigan,* for defendants in error.

The opinion of the court was delivered by

MASON, J.: William H. Bush & Co. obtained a judgment against B. A. Adams before a justice of the peace. A transcript of the judgment was filed in the district court. An execution was issued and levied upon the interest of the defendant in a tract of real estate, which was sold to the plaintiffs, who filed a motion for the confirmation of the sale. Adams and his wife moved to set the sale aside upon the ground that the real estate in question was their homestead, and, as such, exempt from seizure. Upon a hearing the court sustained the claim of exemption and set aside the sale. Bush & Co. prosecute error.

The trial court made detailed findings of fact, and

the only question presented is whether the facts so found justify the conclusion that the property, within the meaning of the constitution and statute, was occupied by Adams as a homestead when the transcript was filed in the district court, at which time the judgment otherwise became a lien upon it. The findings disclose, in substance, that some years before this litigation began Adams and his wife resided upon this land—a farm which they owned together. They, however, abandoned the farm as a homestead and moved to Pomona, where Adams engaged in business and where they bought a home in which they lived. A short time before May 16, 1904, Adams failed, and made a general assignment for the benefit of his creditors. At the time of his failure he and his wife concluded to surrender their home in Pomona to the creditors, and to move back to the farm and make that their home, and this intention they never abandoned. They remained in Pomona in the same house—in order to assist the creditors in disposing of the stock and collecting the debts—until October 1, 1904, when they moved to the farm, where they have since resided. While Adams lived in Pomona he kept the farm so rented that he had the right to move back at any time. The judgment against Adams was rendered, and the transcript was filed in the district court, on May 16, 1904. The execution was issued in November, 1904.

In order that property may be exempt on the ground of its homestead character it must be "occupied as a residence by the family of the owner." (Const., art. 15, § 9; Gen. Stat. 1901, § 3016.) In Kansas, and in other states having similar constitutional and statutory provisions, it is held that such occupancy need not always be actual or physical. The courts deal liberally with claims of homestead exemption asserted in good faith, but cannot extend the right beyond the language of the law defining it. It is difficult to derive from the decisions a general rule of universal applica-

tion. In volume 15 of the American and English Encyclopedia of Law, at page 578, it is said:

"A *bona fide* and clearly defined present intention to acquire and occupy certain premises as a homestead, evidenced by overt acts in fitting them up for such a purpose, and followed within a reasonable time by actual physical occupancy, the delay being only for the time necessary to effect removal to the premises, or to build needed improvements or repairs, or to complete a dwelling-house in process of construction, or the like, render the land exempt as a homestead from the time of its acquisition with such intent."

The cases bearing upon the matter are collected in notes upon the page cited and that following, and show that the doctrine of constructive possession has seldom been pressed beyond the limits indicated by the text. The defendants in error rely upon the authority of a line of Kansas decisions of which *Monroe v. May, Weil & Co.,* 9 Kan. 466, is a type. It was there said that "a purchase of a homestead with a view to occupancy, followed by occupancy within a reasonable time, receives from the time of purchase a homestead exemption from seizure upon execution or attachment." The very purchase of a property designed to be used as a homestead is itself, however, an overt act that might under some circumstances tend to give expression to such purpose. Here that element is entirely wanting, and there is nothing to take its place. If Adams and his wife, by simply making up their minds to regard as their home the farm which they already owned and to move to it as soon as the purpose of a temporary stay in Pomona should be accomplished, could render it exempt from seizure, then it would follow that premises could be impressed with a homestead character by a mere mental process unaccompanied by any physical act whatever—a proposition which the authorities uniformly deny. For a somewhat similar case see *Savings Bank v. Wheeler's Adm'r,* 20 Kan. 625. The surrendering to the creditors of the premises in Pomona occupied by Adams and his family

might be effectual to accomplish the abandonment of that property as a homestead, but it could not of itself give effect to his intention to invest the farm with that quality.

The judgment is reversed, with directions to confirm the sheriff's sale.

All the Justices concurring.