In re Elmer Austin McROY and Louise Vanilla McRoy, Debtors.

Bankruptcy No. 93–20112–7.

United States Bankruptcy Court, D. Kansas.

Dec. 20, 1996.

Michael G. Jones, Leavenworth, KS, for Debtors Elmer Austin McRoy and Louise Vanilla McRoy.

William E. Pray, Leavenworth, KS, for Creditors Velma and Ralph Collins.

## MEMORANDUM OPINION [1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

This case involves the Kansas common law doctrine of constructive occupancy of a homestead.

Ralph and Velma Collins sued Elmer McRoy in the District Court of Leavenworth County, Kansas, and obtained a default judgment on January 22, 1991.[2] Elmer and his wife, Louise, filed for Chapter 7 relief on January 26, 1993, and moved under 11 U.S.C. § 522(f) to avoid the Collinses' alleged judgment lien against their residence.

Section 522(f) permits the debtor to "avoid the *fixing* of a lien on an interest of the debtor in property to the extent such lien *impairs* an exemption to which the debtor is entitled" under the Code. Under Kansas law, however, a judgment lien does not attach to a homestead.[3] Therefore such a lien does not "fix on an interest of the debtor" in an exempt homestead and "impair" the exemption as § 522(f) requires. Consequently, if the subject property is a Kansas homestead, a debtor's use of § 522(f) is superfluous. From the evidence presented, the Court finds that under the Kansas doctrine of constructive occupancy, the McRoys' residence is their homestead; consequently, no lien attaches to the residence as a result of the Collinses' judgment.[4]

## Findings of Fact

In 1988, Elmer and Louise McRoy resided at 916 Miami Street, Leavenworth, Kansas. This residence was an older home that had been given to them by Mrs. McRoy's parents in the late 1960s or early 1970s. A fire had damaged the home in 1986 and, although livable, it remained in less than ideal condition. Mrs. McRoy wanted to move to a larger home in the country. Since Elmer was a builder, they planned to build and occupy a new home and rent the 916 Miami property. To implement this plan, they purchased a lot at 27197—179th Street in Leavenworth County, Kansas.

Following the purchase, the McRoys obtained blueprints for a 3,600 square foot, five-bedroom home with two and one-half bathrooms. They sought and received a construction loan from Leavenworth National Bank and took bids on the cost of a foundation for the home. They then promptly arranged for the connection of utilities to the property. Debtors' Exhibit 2 in evidence, a record of charges for electrical service from October 1988 through August 27, 1993, shows that electrical service was connected in October 1988. Debtors' Exhibit 3 in evidence, a water bill record from October 1988 through October 1995, shows water service was connected in December 1988 and continued thereafter. Debtors' Exhibit 1 in evidence, a $6,830 bill for the foundation dated October 7, 1988, which the testimony indicates was received after the foundation work was completed, shows the foundation was poured in 1988. After the foundation was poured, Elmer put in floor joists himself and in January 1989 started to frame the structure. He started the roof sometime in 1989.

---

1. Debtors Elmer Austin McRoy and Louise Vanilla McRoy appear by their attorney, Michael G. Jones, Leavenworth, Kansas. Creditors Velma and Ralph Collins appear by their attorney, William E. Pray, Leavenworth, Kansas.

2. Although Louise McRoy is a debtor in this bankruptcy case, she was not a party defendant in the state court suit against Elmer. Since neither counsel has suggested that this fact is significant, the Court will not treat it as such.

3. There can be exceptions to the rule when a divorce court imposes a lien while dividing property. *Bohl v. Bohl*, 234 Kan. 227, 670 P.2d 1344 (1983); *Blankenship v. Blankenship*, 19 Kan. 159 (1877). But the general rule in Kansas is that a judicial lien does not attach to a homestead. *Jones v. St. Francis Hosp. & School of Nursing*, 225 Kan. 649, 594 P.2d 162 (1979).

4. The Court finds that this proceeding is core under 28 U.S.C. § 157 and that the Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D.Kan.Rule 83.8.5).

After converting his construction loan to a conventional loan in September 1989 to save interest expense, Elmer began staying overnight at the 179th Street property seven nights per week while he worked on the home. Along with his watch dog, he took with him a bed and an antique cabinet (which he described as a "chifforobe") that his mother had given him. Louise McRoy also stayed overnight at the property on one occasion in August or September 1990, and she worked on the house at other times, assisting with waterproofing the basement and installing insulation. The McRoys moved into their new home in mid–1991.

The McRoys called Jim Harkins and Fredrick Johnson as witnesses. Jim Harkins, a retired military man, worked on the roof and siding of the home. He stated the roof was put on in a hot month in 1990. He confirmed that Elmer was set up to live on the property with water, a cot, and a cooler. He observed that Elmer had a garden on the property and that he overheard Elmer say that he wanted to get out of the city and live where he and his wife would be away from people. Fredrick Johnson also helped build the house. He helped sheet rock the walls and assisted building the roof. He confirmed that McRoy stayed at the property for a short time in early to mid–1990. He knew this because in 1990 he, Elmer, and another man were employed together in Kansas City. The men took turns driving each other to work and on several mornings picked Elmer up at the 179th Street property.

The evidence is vague on the nature of the problem that ensued between Elmer and the Collinses, but apparently Elmer had contracted with them to do some construction work. A problem developed between them, resulting in claims by the Collinses against Elmer, and Elmer began negotiating directly with their attorney, Robert Hall. The negotiations failed and on November 13, 1990, the Collinses, acting through Mr. Hall, filed suit against Elmer. Although Elmer claims never to have been served with a summons or petition, the Leavenworth County district court entered default judgment against him individually on January 22, 1991.

In mid–1991, during a foreclosure on their 916 Miami Street residence, the McRoys moved into the 179th Street home. They moved out of the Miami Street house before the foreclosure was complete. At the time of the hearing on this motion, they continued to live in the 179th Street home.

Ralph Collins called his state court attorney, Robert Hall, as his only witness. Hall testified that he began representing the Collinses in 1990 when Ralph complained to him that Elmer McRoy had failed to complete a contract and had misused money that the Collinses had advanced him for the purchase of lumber.

After the default judgment was entered, Hall learned that the McRoys owned property on 179th Street in addition to their Miami Street residence. With this knowledge, Hall issued a special execution and published a notice of sheriff's sale of the 179th Street property. He received no response to the notice.

In March or April of 1991, before the date scheduled for the sheriff's sale, Hall visited the 179th Street property where he saw a large, two-story home being built. He entered the home through the basement but did not go upstairs because he heard a dog barking there. He observed that there was a graveled area next to the structure and that the garage lacked doors or a floor. He also saw construction materials, wooden stairs, wall studs, plumbing, and electrical wiring at the site. He denied seeing a stove or furniture that would indicate the home was being lived in; however, he did not visit every room in the house because of the barking dog.

After his inspection, Hall decided the value of the residence would cover the judgment, but he learned later that there was a substantial lien against the property. Perhaps this explains why the scheduled sheriff's sale was aborted, as Collinses' factual contentions in the pretrial order reflect.[5]

### Conclusions of Law

 Under Kansas law, a judgment against the owner of real property becomes a lien on the property of the owner located in

---

5. Final Pretrial Conference Order filed November 7, 1995, paragraph 4(f), at 3.

the county where the judgment is entered.[6] However, if the property is a homestead, the judgment lien does not attach to it because the homestead is exempt from levy and sale.[7] Generally, to have the status of a homestead, real property must be occupied as a residence by its owner; however, as expressed in an early Kansas case, "occupancy need not always be actual or physical." [8] Rather, constructive occupancy can substitute for actual occupancy: "A purchase of a homestead, with a view to occupancy, followed by occupancy within a reasonable time, receives from the time of purchase a homestead exemption from seizure upon execution or attachment." [9]

▇▇▇ Thus the doctrine of constructive occupancy of a homestead applies where property is purchased with the intent to build and occupy it as a residence. But, the intent must be manifested by overt acts followed by actual physical occupancy reasonably delayed only for preparation for occupancy, as the following quotation from the early Kansas case of *Bush v. Adams* reflects:

"A *bona fide* and clearly defined present intention to acquire and occupy certain premises as a homestead, evidenced by overt acts in fitting them up for such a purpose, and followed within a reasonable time by actual physical occupancy, the delay being only for the time necessary to effect removal to the premises, or to build needed improvements or repairs, or to complete a dwelling-house in process of construction, or the like, render the land exempt as a homestead from the time of its acquisition with such intent." [10]

In *Bush*, however, the court found that the landowners had purchased the property as farm land and had failed to overtly exhibit an intention to make it their homestead before the judgment lien attached.

More on point here is *Security State Bank of Scott City v. Coberly*,[11] a case in which the landowners did not occupy the property until after judgment was entered, but for eight months prior to their occupation, they took overt steps to prepare the land for entry. They caused a well to be cleaned and purified; they notified their mortgagee that their mobile home was being moved to the property; they poured a foundation for the mobile home; and they connected the electricity. The court held the landowners had overtly exhibited their intention to make the property their homestead.

Certainly this is the case with the McRoys. The evidence is uncontroverted that they purchased the 179th Street property in June 1988 with the intention of building a residence and occupying it as their homestead, an intention they have overtly manifested in numerous ways. They obtained a construction loan which they later converted to a conventional loan. They caused electrical and water service to be connected in 1988 and a foundation to be poured before October 7 of that year. They continued construction from late 1988 until they moved into the home around the middle of 1991. In September 1989, before the state court suit was filed, Elmer McRoy physically occupied the premises on a temporary basis while working to construct his home, and Louise stayed overnight on the property on one occasion and also performed work there on other occasions before final occupancy.

Arguably, the only distinction between *Coberly* and this case is the time it took to complete the steps necessary to occupy the residence. The Coberlys took eight months to actually occupy their home, while the McRoys took almost three years—from June 1988 until mid-1991.

The Collinses could have maintained that the constructive occupancy rule is inapplica-

6. K.S.A. § 60–2202, Judgment Liens.

7. *Supra*, note 3, *Jones v. St. Francis Hosp. & School Nursing*, 225 Kan. 649, 594 P.2d 162 (1979).

8. *Bush v. Adams*, 72 Kan. 556, 557, 84 P. 122 (1906).

9. *Monroe v. May, Weil & Co.*, 9 Kan. 318, Syl., ¶ 3 (1872).

10. *Bush v. Adams*, 72 Kan. 556, 558, 84 P. 122 (1906), citing vol. 15 of the American and English Encyclopedia of Law at 578.

11. 5 Kan.App.2d 691, 623 P.2d 544 (1981).

ble because the McRoys took an unreasonable time to occupy their homestead. Three years to complete construction and move into the home is considerably longer than the eight months in the *Coberly* case. But the record is devoid of evidence or argument on the point. What evidence there is shows that Elmer McRoy, himself a builder, was constructing the house with the help of subcontractors, apparently while he also worked at another job in Kansas City. No evidence shows the extent of his financial resources for the project, other than that he had a construction loan that he converted to a conventional loan, the amount and terms of either of which were not revealed. Reason would not expect McRoy to proceed with completion of the home faster than his economic circumstance would allow. Yet, no evidence shows that he was dilatory in the context of those circumstances. The Court therefore concludes that under the evidence presented, it was not unreasonable to complete this project and take occupancy within a three-year period from the purchase of the property.

■ Finally, the statement at paragraph 4(f) of the pretrial order indicates that Elmer McRoy did not designate the 179th Street property as his homestead under K.S.A. § 60–2302 while the sheriff's sale notice was outstanding. And in his closing argument, Mr. Pray, the Collinses' bankruptcy counsel, posited that under the doctrine of laches this lack of a written homestead designation in the proceeding to sell the 179th Street property bars the McRoys from claiming a homestead right. The problem with this argument is that the sale was aborted.[12] The Kansas statute expressly states that the written designation of homestead can be made to the levying officer "at any time before the sale." Since the sale never took place, the McRoys were never required to make the designation.

Having found from the evidence that under the applicable Kansas homestead law the lien of the default judgment did not attach to the McRoys' constructively occupied homestead, the Court finds § 522(f) is superfluous in this case. Since the judgment lien did not attach to the Kansas homestead, it did not "fix on an interest of the debtor" in an exempt homestead and "impair" the exemption as required by § 522(f).[13] There being no lien on the homestead to avoid, the Court finds in favor of the debtors.

The foregoing discussion shall constitute findings of fact and conclusions of law under Fed.R.Bankr.P. 7052 and Fed.R.Civ.P. 52(a).

IT IS SO ORDERED.

---

12. Final Pretrial Conference Order filed November 7, 1995, paragraph 4(f), at 3.

13. For a hazy case reaching a similar result but by applying § 522(f) to avoid a judicial lien on a homestead where, as in Kansas, the lien is unen-

forceable under state law, *see In re Henderson*, 18 F.3d 1305 (5th Cir.1994) (holding that a judicial lien, albeit unenforceable under Texas law, impairs the debtor's homestead exemption by creating a "cloud" on the debtor's title).