**In the Matter of Lisa L. McMASTERS, Debtor.**

**Bankruptcy No. 97–05623–M.**

United States Bankruptcy Court, N.D. Oklahoma.

April 17, 1998.

*In re Continental Airlines Corp.,* 110 B.R. 276, 280 (Bankr.S.D.Tex.1989).

J. Scott McWilliams, Tulsa, OK, for debtor.

Cindy L. Pylant, Broken Arrow, OK, pro se.

## MEMORANDUM OPINION

TERRENCE L. MICHAEL, Bankruptcy Judge.

THIS MATTER comes before the Court pursuant to the Motion to Avoid Lien of Cindy L. Pylant (the "Motion") filed by Lisa L. McMasters, Debtor herein ("Ms. McMasters" or "Debtor"), and the Objection to the Motion (the "Objection") filed by Cindy L. Pylant ("Ms. Pylant"). A hearing on the

Motion and the Objection was held on February 17, 1998. Debtor appeared through her attorney, J. Scott McWilliams. Ms. Pylant appeared *pro se*. Also appearing was Lonnie Eck, the standing Chapter 13 Trustee. The Court heard argument from the parties and was advised that no relevant facts were in dispute. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b),[1] and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A) and (O).

### Findings of Fact

The operative facts in this matter are relatively simple. Debtor filed her Chapter 13 bankruptcy petition with this Court on December 3, 1997. In her schedules and statement of affairs, Debtor claimed as her exempt homestead certain real estate located in Tulsa County (the "Homestead"). Debtor apparently acquired the Homestead prior to 1994.[2] The exemption was claimed pursuant to 31 Okla. Stat. Ann. tit. 31, § 1(A)(1) (West 1991), which provides for an exemption in real estate, "provided that such home is the principal residence" of the party claiming the exemption. The time for objecting to Debtor's exemptions has passed without objection. In her schedules, Debtor values the Homestead at $100,000, subject to a first lien in the amount of $68,000.

On May 17, 1996, Ms. Pylant obtained a judgment (the "Judgment") against the Debtor in the amount of $4,500 in the County Court of Tulsa County. Debtor admits that the Judgment constitutes a lien upon the Homestead. Debtor has filed the Motion in order to avoid the lien of the Judgment upon the Homestead.

---

**1.** Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (West 1998).

**2.** In her schedules, Debtor indicates that GE Capital Mortgage Company holds a consensual first lien upon the Homestead which was granted in 1989.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

### Conclusions of Law

Debtor seeks to avoid the lien held by Ms. Pylant upon the Homestead pursuant to § 522(f)(1)(A) of the United States Bankruptcy Code, which provides as follows:

Notwithstanding any waiver of exemptions, but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien, other than a judicial lien that secures a debt—

(I) to a spouse, former spouse, or child of the debtor....

11 U.S.C. § 522(f)(1)(A) (West 1998). Ms. Pylant is not the spouse, former spouse or a child of the Debtor; accordingly, the Judgment is not governed by the exceptions found in subsection (I) of § 522(f)(1)(A). Similarly, § 522(f)(3), which deals with liens upon certain items of personal property, is not applicable to the facts presented here. *See* 11 U.S.C. § 522(f)(3) (West 1998).

Prior to November 1, 1997, it was well settled under Oklahoma law that a judgment lien did not attach to the homestead, and could not be enforced against the same. *See In re Cochran,* 204 B.R. 577, 580–581 (Bankr. W.D.Okla.1997) (and cases cited therein). Ms. Pylant argues that the Judgment may not be avoided as a result of the following amendment to the Oklahoma statutes which took effect November 1, 1997:

A. Scope. This section applies to all judgments of courts of record of this state, and judgments of courts of records of the United States not subject to the registration procedures of the Uniform Federal Lien Registration Act, Section 3401 et seq. of Title 68 of the Oklahoma Statutes, which award the payment of money, regardless of whether such judgments also include other orders or relief.

B. Creation of Lien. A judgment to which this section applies shall be a lien on the real estate of the judgment debtor within a county only from and after a statement of Judgment made by the judgment creditor or the judgment creditor's attorney, substantially in the form prescribed by the Administrative Director of the Courts, has been filed in the office of the county clerk in that county.

1. Presentation of a Statement of Judgment and tender of the filing fee, shall upon acceptance by the county clerk, constitute filing under this section.

2. A lien created pursuant to this section shall affect and attach to all real property, including the homestead of judgment debtors whose names appear in the Statement of Judgment; however, judgment liens on a homestead are exempt from forced sale pursuant to section 1 of Title 31 of the Oklahoma Statutes and Section 2 of Article XII of the Oklahoma Constitution.

Okla. Stat. tit. 12, § 706(A) and (B) (West 1988 & Supp.1998). The question before the Court is whether, despite the recent change in the language of § 706, the lien upon the Homestead may be avoided by Ms. McMasters pursuant to § 522(f).

The United States Supreme Court has rendered an opinion dealing with a factual situation analogous to the case at bar. In *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) (hereafter *"Owen"*), the debtor's ex-wife obtained a judgment against the debtor and recorded the judgment lien in Sarasota County in 1976. The debtor obtained a condominium in Sarasota County, Florida in 1984. Under Florida law, the judicial lien attached to the condominium at the time of its purchase. In 1985, one year after the purchase date, the Florida legislature broadened the scope of Florida's homestead exemption such that debtor was now able to claim the condominium as an exempt homestead. Under Florida law a homestead " 'is exempt from forced sale ... and no judgment, decree or execution [can]

be a lien thereon.' " *Owen,* 500 U.S. at 307, 111 S.Ct. at 1835 (citing Fla. Const., Art. 10, § 4(a)). However, the exemption does not defeat judgment liens that attached to the property before it acquired homestead status. When the debtor filed for Chapter 7 bankruptcy in 1986, he sought to avoid the judgment lien on the condominium under the Florida homestead exemption. The United States Bankruptcy Court for the Middle District of Florida,[3] the District Court for the Middle District of Florida[4] and the Court of Appeals for the Eleventh Circuit[5] all held that because the lien attached to the condominium in 1984, and because at the time the lien attached to the condominium it was not exempt, the lien did not impair the exemption, and could not be avoided under § 522(f). The United States Supreme Court reversed and remanded. *Owen,* 500 U.S. at 314, 111 S.Ct. at 1839.

▉ In making its decision, the Supreme Court focused on the avoidance power created under § 522:

> The lien in the present case is a judicial lien, and we assume without deciding that it fixed "on an interest of the debtor in property." *See Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). The question presented by this case is whether it "impairs an exemption to which [petitioner] would have been entitled under subsection (b)." Since Florida has chosen to opt out of the listed federal exemptions, *see* Fla. Stat. § 222.20 (1989), the only subsection (b) exemption at issue is the Florida homestead exemption described above. Respondent suggests that, to resolve this issue, we need only ask whether the judicial lien impairs that exemption. It obviously does not, since the Florida homestead exemption is not assertable against pre-existing judicial liens. To permit avoidance of the lien, respondent urges, would not *preserve* the exemption but would *expand* it.

> At first blush, this seems entirely reasonable. Several Courts of Appeals in addition to the Eleventh Circuit have reached

this result with respect to built-in limitations on state exemptions, though others have rejected it. What must give us pause, however, is that this result has been widely *and uniformly* rejected with respect to built-in limitations on the *federal* exemptions.... To determine the application they [the bankruptcy courts] ask not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which *he would have been* entitled but for the lien itself.

> As the preceding italicized words suggest, this reading is more consonant with the text of § 522(f)—which establishes as the baseline, against which impairment is to be measured, not an exemption to which the debtor "*is* entitled," but one to which he "*would have been* entitled." The latter phrase denotes a state of affairs that is conceived or hypothetical, rather than actual, and requires the reader to disregard some element of reality. "Would have been" *but for what?* The answer given, with respect to the federal exemptions, has been *but for the lien at issue,* and that seems to us to be correct.

*Owen,* 500 U.S. at 309–311, 111 S.Ct. at 1836–1837 (italics in original) (footnotes omitted). The Supreme Court goes on to say that

> We have no doubt, then, that the lower courts' unanimously agreed-upon manner of applying § 522(f) to federal exemptions—ask first whether avoiding the lien would entitle the debtor to an exemption, and if it would, then avoid and recover the lien—is correct. The question then becomes whether a different interpretation should be adopted for State exemptions. We do not see how that could be possible. Nothing in the text of § 522(f) remotely justifies treating the two categories of exemptions differently. The provision refers to the impairment of "exemption[s] to which the debtor would have been entitled under subsection (b)," and that includes federal exemptions and state exemptions alike. Nor is there any overwhelmingly

**3.** *In re Owen,* 64 B.R. 258 (Bankr.M.D.Fla.1986).

**4.** *In re Owen,* 86 B.R. 691 (M.D.Fla.1988).

**5.** *In re Owen,* 877 F.2d 44 (11th Cir.1989).

clear policy impelling us, if we possessed the power, to create a distinction that the words of the statute do not contain.

. . .

On the basis of the analysis we have set forth above with respect to federal exemptions, and in light of the equivalency of treatment accorded to federal and State exemptions by § 522(f), we conclude that Florida's exclusion of certain liens from the scope of its homestead protection does not achieve a similar exclusion from the Bankruptcy Code's lien avoidance provision.

*Owen,* 500 U.S. at 312–314, 111 S.Ct. at 1837–1838 (footnotes omitted). Under the rationale of *Owen,* debtors may avoid liens upon property in order to avail themselves of the full benefit of the exemption, even if the lien at issue is not avoidable under applicable state law. Other courts which have analyzed *Owen* have reached the same conclusion. *See In re Ehlen,* 202 B.R. 742, 744–745 (Bankr.W.D.Wis.1996); *In re Parrish,* 186 B.R. 246, 247 (Bankr.W.D.Wis.1995).

In a decision issued before *Owen,* the United States Court of Appeals for the Tenth Circuit adopted a similar analysis:

A debtor is entitled to avoid a lien to the extent the debtor would have been entitled to an exemption under either the federal or the state statutes. The debtor's right to claim avoidance of a lien on property under § 522(f) is determined by considering whether the property, if unencumbered, is exempted under the state statutory exemptions. If unencumbered property may be exempted under the state exemptions, then any non-possessory, non-purchase money lien on that property could be avoided under § 522(f).

. . .

Any other reading of § 522(f) would make the language meaningless and would lead to an absurd result. If § 522(f) were to be read as allowing the debtor to avoid a lien only on the debtor's equity in the exempt property, to which the lien would not ultimately attach under any circumstances, it would totally disregard the lien avoidance language set forth in § 522(f). In other words, if Appellant's construction of § 522(f) were to be adopted, then as long as a security interest exists, the debtor would never be entitled to avoid a lien.

*In re Leonard,* 866 F.2d 335, 336–337 (10th Cir.1989). Although *Leonard* dealt with avoidance of a consensual non-possessory, non-purchase money lien, its rationale is equally applicable to judgment liens.

▪ In the case at hand, Oklahoma's exemption scheme [6] allows the Debtor to claim the Homestead as exempt, protecting it from forced sale. Even though the Homestead is properly exempt under Okla. Stat. Ann. tit. 12, § 706(B)(2) (West 1988 & Supp. 1998), Ms. Pylant's judicial lien attaches. The Supreme Court has held that the correct way to consider the issue is not to ask "whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which he would have been entitled but for the lien itself." *Owen,* 500 U.S. at 310–311, 111 S.Ct. at 1836–1837. The question is whether, if no judgment lien existed, Debtor would be entitled to claim her entire homestead as exempt. Relying on the holding of the United States Supreme Court in the *Owen* case, and the decision of the Tenth Circuit in *Leonard,* this Court finds that the judicial lien which attached to the Debtor's homestead in this case impairs her homestead exemption and should be avoided. This Court finds that *but for* the Judgment and subsequent lien which attached to the Homestead, Ms. McMaster's would have been entitled to exempt the Homestead in its entirety. Therefore, the judgment lien held by Ms. Pylant impairs the homestead exemption and can be avoided by Ms. McMasters.

This Court is aware that one of its esteemed brethren has recently reached the opposite result on this same issue. *See In re McKinney–Jones,* 219 B.R. 619, 620–22 (Bankr.W.D.Okla.1998) (hereafter *McKinney* ). The linchpin of the *McKinney* deci-

---

**6.** Like Florida, Oklahoma has chosen to opt-out of the federal exemption scheme, limiting the exemptions available in bankruptcy cases to those allowed under state˙ law 11 U.S.C. § 522(b)(1), and Okla. Stat. Ann tit. 31, § 1 et. seq. (West 1991 & Supp.1998), respectively.

sion is the legal conclusion that, as a result of the amendments to Okla. Stat. tit. 12 § 706(A) and (B) (West 1988 & Supp.1998), a judgment lien no longer impairs the homestead exemption. This Court disagrees, especially in light of the rulings in *Owen* and *Leonard.* The Court disagrees with *McKinney* for yet another reason. It has been long held by the courts of Oklahoma that proceeds from the voluntary sale of a homestead retain their exempt character so long as there is a good faith intent to reinvest those proceeds in the subsequent purchase of homestead property. *See Harrell v. Bank of Wilson,* 445 P.2d 266 (Okla.1968); *Farmers' State Bank of Newkirk v. Hess,* 251 P. 73, 120 Okla. 210 (1926); *Field v. Goat,* 173 P. 364, 70 Okl. 113 (1918). If these decisions remain good law, this Court is hard pressed to understand how a judgment which clouds the title to homestead property does not impair its exempt status.[7]

The Motion to Avoid Lien of Cindy L. Pylant (the "Motion") filed by Lisa L. McMasters, Debtor herein, is granted.

**7.** If the Homestead is ever sold, the Judgment must presumably be satisfied at the time of the sale in order for clear title to pass to the buyer. Satisfaction of the Judgment would impair Debt-or's ability to use the proceeds of sale to purchase her new homestead, as allowed under the cases cited above.