**In re Jasper CISNEROS and Irene Cisneros, Debtors.**

No. 13–96–12492 SA.

United States Bankruptcy Court,
D. New Mexico.

Dec. 21, 2000.

William P. Gordon, Albuquerque, NM, trustee.

Kelley L. Skehen, Albuquerque, NM.

### MEMORANDUM OPINION ON DEBTORS' MOTION TO AVOID JUDICIAL LIEN AND THE OBJECTION THERETO BY TONNESON

JAMES S. STARZYNSKI, Chief Judge.

This matter came before the Court for hearing on the Debtors' Motion to Avoid Judicial Lien and the objection thereto by Jennie Tonneson. Debtors appeared through their attorney Holt Guysi. Tonneson appeared through her attorney Will Jeffrey. This is a core proceeding. 28 U.S.C. § 157(b)(2)(B) and (K).

Debtors filed their chapter 13 petition on June 11, 1996. They listed their homestead as having a value of $76,000 [1] secured by a lien held by Transamerica in the amount of $9,114. Debtors list a judgment [2] in favor of Tonneson in the amount of $42,813.42. Tonneson's proof of claim, timely filed, asserts a claim of $58,285.57. (The difference in amounts makes no difference for purposes of this decision.) On Schedule C the Debtors claimed a $60,000 homestead exemption pursuant to Section 42–10–9 N.M.S.A.1978. No objections to the exemption were filed. On June 24, 1996, Debtors filed their Motion to Avoid Judicial Lien. (Doc. 9) On July 26, 1996, Tonneson filed her objection, stating the value of the residence was greater than that set forth in Schedule A.[3] (Doc. 14) No hearing on the motion or objection was set, and the Debtors received their discharge on October 21, 1998 and the case was closed. On March 14, 2000, the Debtors moved to reopen the case to pursue the lien avoidance motion, (Doc. 22), and on March 20, the Court reopened the case. (Doc. 23) On May 1, 2000, the Court heard argument on the avoidance motion, based on oral factual stipulations from the parties, and took the matter under advisement. The focus of the arguments was on case law that questions the relevance of 522(f)'s lien avoidance mechanism in a state homestead exemption context. The record and parties are apparently in agreement that the transcript of judgment became effective after the Debtors had acquired their interest in the property. *Compare Farrey v. Sanderfoot,* 500 U.S. 291, 298, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991) (Section 522(f)(1) permits avoidance of the "fixing of a lien on an interest of the debtor", so may not be used to avoid liens that fixed before debtor had an interest in the property.)

---

**1.** Debtors Schedule A stated a fair market value of $76,000, then reduced it by 10% for "sales costs" and listed its value at $68,400. Based on *Associates Commercial Corporation v. Rash,* 520 U.S. 953, 965, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), the Court will use the fair market value without reduction for hypothetical costs of sale.

**2.** A money judgment can be docketed upon request and "shall be a lien on the real estate of the judgment debtor." Section 39–1–6 N.M.S.A.1978 (1991 Repl.).

**3.** The objection was filed about nine days late, but the Court finds that the Debtors suffered no prejudice from the late filing, particularly in view of the fact that the case was afterward closed, then reopened, and the merits have only now come on for decision almost four years later.

*Discussion*

Section 522(f) provides

(1) [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is

   (A) a judicial lien

. . .

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

   (i) the lien;

   (ii) all other liens on the property; and

   (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

In cases with facts dating from prior to the 1994 amendment to § 522, the Tenth Circuit has employed a three-step process to determine the applicability of the statute to the facts:

1) determine whether the debtor is entitled to an exemption,

2) determine the extent to which the lien may be avoided, and

3) determine whether the lien actually impairs the exemption.

*David Dorsey Distributing Inc. v. Sanders (In re Sanders)*, 39 F.3d 258, 261–62 (10th Cir.1994) (citing *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991)); *Albuquerque Chemical Company, Inc. v. Arneson Products, Inc.*, 201 F.3d 447, 1999 WL 1079600, 5 (10th Cir.1999) (unpublished opinion).[4] Although it appears to the Court that the 1994 amendment to § 522 has effectively required a

modification to the three-step test, at a minimum to the second step, the Court will begin its analysis using that test.

Section 42–10–9 N.M.S.A.1978 (1996) provides:

Each person shall have exempt a homestead in a dwelling house and land occupied by him or in a dwelling house occupied by him although the dwelling is on land owned by another, provided that the dwelling is owned, leased, or being purchased by the person claiming the exemption. Such a person has a homestead of thirty thousand dollars ($30,000) exempt from attachment, execution or foreclosure by a judgment creditor and from any proceeding of receivers or trustees in insolvency proceedings and from executors or administrators in probate. If the homestead is owned jointly by two persons, each joint owner is entitled to an exemption of thirty thousand dollars ($30,000).

For the first step, the parties do not dispute that the Debtors are entitled to claim a combined homestead exemption totaling $60,000.

■■ For the second step, applying the provisions of § 522(f)(2)(A), the lien may be partially avoided. *See East Cambridge Savings Bank v. Silveira (In re Silveira)*, 141 F.3d 34, 36 (1st Cir.1998):

If Congress intended for avoidance of judicial liens to be an "all-or-nothing" matter, one might wonder why the provisions' drafters chose to use the connective phrase, "to the extent that," in lieu of the word "if", which obviously would have been a simpler construction.

*and Tedeschi v. Falvo (In re Falvo)*, 227 B.R. 662, 666 (6th Cir. BAP 1998):

[T]he plain language of § 522(f) mandates only partial lien avoidance . . . Several courts addressing § 522(f) after

---

4. *See* 10th Cir. R. 36.3(B)(1) (Unpublished decision may be cited if it has persuasive value with respect to a material issue that has not been addressed in a published opinion.)

There is no published Tenth Circuit case construing lien avoidance under New Mexico's homestead exemption statute.

the 1994 amendments have determined that partial lien avoidance is appropriate in these circumstances and that full avoidance is inconsistent with the language and intent of the statute.

*See also Sheth v. Affiliated Realty & Management Co. (In re Sheth)*, 225 B.R. 913, 918 (Bankr.N.D.Ill.1998):

> This Court concludes that the plain meaning of the statutory language, as well as the reference to the Brantz formula in the legislative history, allow for partial avoidance of a judicial lien to the extent that the lien only partially impairs the debtor's exemption.

*And see Bank of America National Trust and Savings Association v. Hanger (In re Hanger)*, 217 B.R. 592, 595 (9th Cir. BAP 1997) *aff'd* 196 F.3d 1292 (9th Cir.1999) (allowing partial lien avoidance). That is, the sum of $60,000 (exemption) plus $9,114 (mortgage) plus $42,813 (or $58,285), which is $111,927 (or $127,399), exceeds $76,000 (the value of the interest in the property claimed by the Debtors) by $35,927 (or $51,399). Thus, the lien of $42,813 (or $58,285) should be reduced to the extent of the excess, $35,927 (or $51,399). The balance of the lien, in the amount of $6,886 (or $6,886) is not avoided under § 522(f). *Silveira*, 141 F.3d at 38; *Falvo*, 227 B.R. at 666; *Sheth*, 225 B.R. at 917; *Hanger*, 217 B.R. at 595.

This is a different result than would have obtained under *Sanders*. "Notably, this formula [set out in § 522(f)(2)(A) ] differs from, and effectively overrides, the holding in Sanders regarding the extent to which a lien may be avoided." *Albuquerque Chemical Company, Inc. v. Arneson Products, Inc.*, 1999 WL 1079600 at 4, n. 3.

The third step of the test is whether the lien actually impairs the exemption. Under New Mexico law, a homestead is "exempt from attachment", so a judicial lien does not attach to the homestead. *Ranchers State Bank of Belen v. Vega*, 99 N.M. 42, 44, 653 P.2d 873, 875 (1982) ("[L]ien attached to the [debtors'] entire interest in the real property except their homestead which remained free of the lien.").[5] Based on the Tenth Circuit decisions decided in connection with cases filed before the effective date of the 1994 amendment, § 522(f)(1)(A) does not apply since the judicial lien does not attach to the homestead, thereby making the application of § 522(f)(1)(A) unnecessary. *E.g., Albuquerque Chemical Company, Inc. v. Arneson Products, Inc.*, 201 F.3d 447, 1999 WL 1079600, 5 (Under New Mexico law a judgment lien does not attach to the homestead, so 522(f) is superfluous.). *See also David Dorsey Distributing Inc. v. Sanders (In re Sanders)*, 39 F.3d at 262:

> [I]n Utah, a judgment lien never attaches to the homestead ... Avoidance under § 522 is unnecessary because the lien does not fix upon the Utah exemption. Consequently, the Utah homestead is not impaired by a nonconsensual, non-purchase money lien. The Utah debtor's homestead right is fully protected and not in need of intervention by bankruptcy law.

*See also Mediline Service Corporation v. Jordana (In re Jordana)*, 232 B.R. 469, 474 (10th Cir. BAP 1999) *aff'd* 216 F.3d 1087 (10th Cir.2000) (Under version of Oklahoma homestead statute in effect when debtor filed bankruptcy liens did not

---

**5.** In *Vega,* the court was presented only with the issue of the extent of the exemption that could be claimed against the preexisting lien against the property. The property was to be sold under any circumstances, and therefore the court had no occasion to consider the effect of the lien staying in place if the debtor continued to hold the property. And in any event, and not surprisingly, there is no discussion in *Vega* about whether the application of the New Mexico exemption is intended to

have the same effect of safeguarding for the debtor the future appreciation of the equity as is mandated by the federal exemption statute. Pub.L. No. 103–394, H.R. 5611, Floor Statements, 140 Cong. Rec. H 10,764 (daily ed. Oct. 4, 1994), reprinted in Collier on Bankruptcy, App. E, Pt. 9(b), at 9–94 (Rev.Ed. 2000). Thus the usefulness of *Vega* as an explication of state law in these circumstances is questionable.

attach to homestead. "Where the lien does not attach of the homestead, there is nothing to avoid.") (*citing Sanders*, 39 F.3d at 262). *See also In re McRoy*, 204 B.R. 62, 63 (Bankr.D.Kan.1996):

[A] judgment lien does not attach to a homestead. Therefore such a lien does not fix on an interest of the debtor' in an exempt homestead and 'impair' the exemption as § 522(f) requires. Consequently, if the subject property is a Kansas homestead, a debtor's use of 522(f) is superfluous.

*See also In re Dickinson*, 185 B.R. 840, 841 (Bankr.D.Colo.1995) (In Colorado, a judgment lien only attaches to the debtor's net equity after deduction of the homestead exemption amount. "A judgment lien never attaches to the homestead.").[6]

In summary, the Court of Appeals for the Tenth Circuit, applying Utah law, has ruled that application of section 522(f) is superfluous when state law exemptions prohibit the attachment of a judicial lien to the homestead. It reiterated this view in an unpublished opinion construing New Mexico law. The Bankruptcy Appellate Panel for the Tenth Circuit, construing a previous version of the Oklahoma homestead statute, held that use of 522(f) was unnecessary because judicial liens did not attach to the homestead. (In contrast, the B.A.P. ruled that use of 522(f) is applicable to the current version of Oklahoma's homestead because judicial liens now attach to the homestead in that state. *Coats v. Ogg (In re Coats)*, 232 B.R. 209, 211 (10th Cir. BAP 1999).)

This third step of the *Sanders* test is not directly addressed by the 1994 amendment, and therefore it might be argued that *Sanders* is still good law and binding. However, if *Sanders* has been overridden, it is no longer binding. *See Maxwell Hardware Company v. Commissioner of*

*Internal Revenue*, 343 F.2d 713, 716 (9th Cir.1965):

Whenever a Court adopts a rule of decision to sustain a conclusion, interpreting statutory law then applicable, and the legislative authority amends or changes the statutory law to the effect that the same decision could not be reached if the new statute were applied to the same facts, the case is not controlling precedent for judicial interpretation of the new law.

*See also Williams v. Ashland Engineering Co., Inc.*, 45 F.3d 588, 592 (1st Cir.) *cert. denied*, 516 U.S. 807, 116 S.Ct. 51, 133 L.Ed.2d 16 (1995) (Statutory overruling of existing Court of Appeals decision is an exception to the principle of stare decisis.) *Compare Ford v. Cimarron Insurance Company, Inc.*, 230 F.3d 828, 832 (5th Cir.2000) ("[A] prior panel's interpretation of state law has binding precedential effect on other panels of this court absent a subsequent state court decision or amendment rendering our prior decision clearly wrong.")

For the reasons set out below, this Court is comfortable that, when the Tenth Circuit is confronted with the issue of whether the statute as amended is "superfluous and without application" to the debtor's homestead exemption, it will rule that the 1994 amendment effectively overruled the Tenth Circuit's interpretation of whether the lien actually impairs the exemption.

*David Dorsey Distributing Inc. v. Sanders (In re Sanders)*, 39 F.3d 258, was decided on facts occurring and a petition filed before the 1994 amendment. And in *Albuquerque Chemical Company, Inc. v. Arneson Products, Inc.*, the court pointed out that because that case was filed in 1986, 1999 WL 1079600 at 1, or in 1988, *id.* at 4, n. 2, it also was not decided based on the statute as amended in 1994. *Id.* at n.

---

**6.** *And see Shafner v. Aurora National Bank South (In re Shafner)*, 82 F.3d 426, 1996 WL 98809 at 2 (10th Cir.1996) ("In Colorado, a homestead is exempt from execution, so it is not subject to the attachment of a judgment lien ... Section 522(f) is extraneous in this context.") (unpublished opinion).

3.[7]  In consequence, to the extent that the decisions in those cases are based on terms of the statute which Congress amended, they are no longer binding for this case.[8]

■■■■  To begin with, the 1994 amendment specifically defines "impair", making unnecessary resort to other sources, including state statutes or state case law, for a definition or interpretation of the federal statute, *see* § 522(f)(2)(A), as opposed to consulting the state statutes and cases to determine what is the state law.[9]  Further, the legislative history of the 1994 amendment explicitly states what are the cases or decisions which the amendment is intended to overrule, specifying what the problems are that Congress sought to correct[10] and thus providing additional instruction about how the statute is to be interpreted.[11]

The third situation [not intended by Congress when it drafted the Code] is in the Sixth Circuit, where the Court of Appeals, in In re Dixon, 885 F.2d 327 (6th Cir.1989), has ruled that the Ohio homestead exemption only applies in execution sale situations. Thus, the court ruled that the debtor's exemption was never impaired in a bankruptcy and could never be avoided, totally eliminating the right to avoid liens. This leaves the debtor in the situation where, if he or she wishes to sell the house after bankruptcy, that can be done only by paying the lienholder out of equity that should have been protected as exempt property. By focusing on the dollar amount of the exemption and defining 'impaired,' the amendment should correct this problem. By defining 'impairment', the amendment also clarifies that a judicial lien on a property can impair an exemption even if the lien cannot be enforced through an execution sale, thereby supporting the result in In re Henderson, 18 F.3d 1305 (5th Cir.1994), which permitted a debtor to avoid a lien that impaired the homestead exemption even though the lien could not be enforced through a judicial sale.

Pub.L. No. 103–394, H.R. 5611, Floor Statements, 140 Cong. Rec. H 10,764 (daily ed. Oct. 4, 1994), reprinted in Collier on Bankruptcy, App. E, Pt. 9(b), at 9–94 (Rev. Ed.2000) ("1994 Legislative History"). *Henderson v. Belknap (In re Henderson),* 18 F.3d 1305 (5th Cir.1994), *cert. denied* 513 U.S. 1014, 115 S.Ct. 573, 130 L.Ed.2d 490, is instructive on the result that Congress has intended.[12]  Although a number

---

**7.**  "Because, however, the Browns' bankruptcy petition was filed well prior to the 1994 amendments, Sanders remains the controlling precedent in this case." *Albuquerque Chemical Company, Inc. v. Arneson Products, Inc.,* 1999 WL 1079600 at 4, n. 3.

**8.**  The Cisneros' bankruptcy case was filed in 1996. According to Tonneson's proof of claim, her lien was recorded January 31, 1994. However, neither party has argued that the date of recording, before the effective date of the 1994 amendment (October 22, 1994), is significant. In any event, the 1994 amendment was intended to implement the correct interpretation of the statute as Congress had intended it from the outset, which would have resulted in the voiding of the Tonneson lien.

**9.**  "We ... hold that a state may elect to control what property is exempt under state law but federal law determines the availability of the lien avoidance provision." *Aetna Finance Company v. Leonard (In re Leonard),* 866 F.2d 335, 336 (10th Cir.1989) (applying § 522(f) to avoid a nonpossessory, nonpurchase-money security interest in household goods).

**10.**  "The legislative history of the 1994 amendments indicates that Congress intended to overrule decisions that misinterpreted its intent as to the meaning of § 522(f)." *Coats v. Ogg (In re Coats),* 232 B.R. at 213.

**11.**  Although resort to legislative history is not appropriate when the language of the statute is clear, *Zeigler Engineering Sales, Inc. v. Cozad (In re Cozad),* 208 B.R. at 498, and although in the opinion of the Court the language of § 522(f) is clear, the courts' differing applications of the statute suggest that resort to the legislative history would be permissible and useful.

**12.**  *Henderson* was one of the "minority view" cases that *Sanders* explicitly refused to follow. 39 F.3d at 261.

of Texas state cases had held that a judgment lien never attaches to the homestead as long as it remains a homestead, 18 F.3d at 1308–09, *Henderson* held that in effect a judicial lien does attach to a homestead although it is unenforceable. *Id.* at 1309. Although *Henderson* thus differs from *Sanders* and *Albuquerque Chemical* in that in New Mexico the lien does not attach to the exempt portion of the property, the result of *Sanders* and *Albuquerque Chemical* is exactly the same as *Dixon* and the opposite of *Henderson.*

■ In another portion of that same legislative history, Congress directly addressed, and overruled, what the *Sanders* court intended as an effect of its ruling:

[Partial avoidance of the liens] in turn will result, at a minimum, in any equity created by mortgage payments from the debtor's postpetition income—income which the fresh start is supposed to protect—going to the benefit of the lienholder. It may also prevent the debtor from selling his or her home after bankruptcy without paying the lienholder, even if that payment must come from the debtor's ... exempt interest. The formula in this section would not permit this result.

1994 Legislative History, at 9–94. Although this portion of the legislative history was directed at overruling *City National Bank v. Chabot (In re Chabot)*, 992 F.2d 891 (9th Cir.1993), which had voided only a part of the judicial lien (not the situation addressed in *Sanders*), Congress' intent is clear: the holding in *Sanders*, 39 F.3d at 262, that "[t]he practical effect of this holding is to allow any appreciation in the property or retirement of principal to be subject to the lien," is overruled. *Sanders* refusal to apply § 522(f)—by declaring its application be "superfluous"—has exactly the effect that Congress has attempted to prevent.

Thus, it appears that whether a lien 'impairs' an exemption may be determined in every case by applying the § 522(f)(2) formula, regardless of the state law limitations on the exemption. *Coats*, 232 B.R. at 214. (Citation omitted.)

The Court comes to this different conclusion for other reasons as well, based on the language of the statute and on the purposes of the Bankruptcy Code as explicated in the original legislative history.

■ To begin with, Section 522(f) addresses a lien which "impairs" a debtor's exemption. "[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning, ..." *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979), cited in *Sanders*, 39 F.3d at 261 and in *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).[13] Webster's Third New International Dictionary Unabridged (1981), at 1131, provides as one of the definitions of "impair" the meaning "diminish in quantity, value, excellence or strength." *Sanders* ruled that *because the lien does not fix upon the Utah exemption, the homestead is not impaired.* *Sanders*, 39 F.3d at 262. (Emphasis added.) But there can be little question that not avoiding this lien results in a diminishing of the value of the Debtors' exemption (and of their discharge and their fresh start). While the Debtors' homestead exemption is technically and legally "exempt from attachment", in these days in which a title policy is ordinarily a condition of the transfer of an interest in real property, Debtors may well not be able to convey or refinance their property without (1) further state-court litigation to clarify the "non-attachment" of the judgment lien, (2) paying off or otherwise compromising with the creditor, or (3) convincing a title company to insure the title over the existence of this judgment lien on the

---

**13.** With the 1994 amendment, arguably this interpretive exercise is no longer necessary. However, it is instructive that an analysis of § 522(f)(1)(A), part of the statute since 1978, gives a result identical to the result of the 1994 amendment.

record. *See also Coats*, 232 B.R. at 214 n. 8:

> If a debtor wishes to sell his homestead, a judicial lien remaining after discharge would require satisfaction of the judgment at the time of sale in order to clear title. Thus, the mere existence of a judicial lien impairs the homestead exemption because it constitutes a cloud on the title. As the bankruptcy court stated in McMasters [220 B.R. 419, 424 (Bankr.N.D.Ok.1998)], we are hard pressed to understand how a judgment that clouds title to homestead property does not impair its exempt status. *Id.* at 424.[14]

Indeed, during oral argument Tonneson's counsel candidly conceded that the Debtors would need a release from Tonneson in order to sell their property, unless the Debtors are able to remain in the property until the Tonneson lien expires with the passage of time. In short, the Debtors' claim of exemption and receipt of a discharge has done them no good with respect to their fresh start and this creditor's lien.[15]

The issue addressed by *Sanders* was the debtor's attempt "to reach beyond the protection afforded by [*Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991)] to avoid not just the entire amount of his exemption, but the entire amount of the lien." *Sanders*, 39 F.3d at 261. After determining that Sanders was entitled to an exemption, the *Sanders* court then ruled that a lien is not avoidable beyond the amount of the exemption. *Id.* This determination answered the question raised by the appeal (and was corrected by the amendment).

But then *Sanders* went on to address the third prong of the *Owens* test: "whether the lien does, in fact, impair the exemption." *Id.*, at 262. In other words, in addition to addressing the issue of whether (or as part of the conclusion that) the exemption is not impaired, *Sanders* goes on to hold that the lien does not attach to the exempt portion of the debtor's interest in the property. *Id.* Accord, *Albuquerque Chemical Company, Inc. v. Arneson Products, Inc.*, 201 F.3d 447, 1999 WL 1079600, 5. It is at least arguable, therefore, that the *Sanders* court's discussion and ruling on the issue of whether the lien attached to the debtor's homestead exemption and whether the lien impaired the exemption is dicta.

■ As already acknowledged, the New Mexico Supreme Court has ruled explicitly that "The resulting lien attached to the [debtors'] entire interest in the real property except their homestead which remained free of the lien." *Ranchers State Bank of Belen v. Vega*, 99 N.M. 42, 44, 653 P.2d 873, 875. But § 522(f) permits the debtor to "avoid the fixing of a lien on an

---

14. "However, the term 'impair' encompasses more than the idea of 'legal' impairment.... While we recognize that the Hendersons' homestead is not 'legally impaired,'... Belknap's judicial lien does impair the Hendersons' homestead exemption in a very real and practical sense.... Because Belknap's 'unenforceable' lien creates a cloud on the Hendersons' title to their homestead, making it difficult if not impossible to obtain title insurance, we believe that Belknap's judicial lien 'impairs,' i.e., weakens, makes worse, lessens in power, diminishes, and affects in an injurious manner, their homestead exemption." *Henderson*, 18 F.3d at 1309–1310. (Citation omitted.) And *see In re McMasters*, 220 B.R. 419, 424 (Bankr.N.D.Okla.1998): "[T]his Court is hard pressed to understand how a judgment which clouds the title to homestead property does not impair its exempt status."

15. "While in the State of Colorado, exemptions to the bankruptcy [e]state are governed by state law, the availability of lien avoidance provisions is governed by federal. In this case, it makes little sense to deny the debtors access to the § 522(f)(1) lien avoidance provisions because of the vagaries of Colorado law under which a judicial lien does not attach to homestead property. To do so would deny the intent of the Bankruptcy Code in providing the debtors a fresh start and would leave debtors and creditors in limbo as to the status of judicial liens post-bankruptcy." *Robinson v. Robinson (In re Robinson)*, 114 B.R. 716, 720 (D.Colo.1990), rejected by *Sanders* but cited by *Henderson*, 18 F.3d at 1308.

interest of the debtor in property to the extent that such lien impairs an exemption...." In other words, the literal terms of § 522(f) mandate that if the lien attaches to *any* portion of the debtor's interest in the property (not just the exempt portion), then the lien may be avoided to the extent it impairs the exemption. The facts here are that there is a small portion of the equity in the property that the lien attaches to, not covered by the exemption. In this instance, as in *Vega*, there has been the fixing of a lien on the interest of the Debtor in property, even though the lien does not attach to all of the Debtor's interest in the property—i.e., does not attach to the exempt portion of the property. And because the Code ties that lien to an "impairment" of the Debtor's exemption, the lien can be avoided.

Presumably Congress could have written Section 522(f) to allow the debtor to avoid only those liens which "attached to the debtor's homestead," but it did not. The result is not absurd or contrary to the legislative purpose, and it conforms to both the defined and common meanings of the term "impairs". *Zeigler Engineering Sales, Inc. v. Cozad (In re Cozad)*, 208 B.R. at 498 (10th Cir. BAP 1997).

The legislative history of section 522(f), as it read in 1978, provides in relevant part as follows:

> Subsection (e) protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien, ...

S.Rep. 95–989, 95th Congress, 2d Sess. 76 (1978), reprinted in 1978 U.S.Code Cong.

& Admin.News 5787, 5862, and reprinted in Collier on Bankruptcy, App. D, Pt. 4(e)(i), at 4–4021 (Rev.Ed.2000). And that history is entirely consistent with the use of the term "impairs" in the statute. The legislative history makes clear Congress' intent to provide the honest debtor a fresh start, including the provision of exemptions in order to facilitate, or make meaningful, the promise of a fresh start. Not permitting the Debtor to avoid this lien clearly fails to support any of the Congressional goals described in the legislative history.[16]

What is presented in this case is not an issue of the property rights of a secured creditor being violated by a statute, as in, for example, *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 582–83, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) (Frazier–Lemke Act which allowed farm debtors to purchase farm at appraised value declared void as depriving mortgagee of property rights without compensation) or *Ranchers State Bank of Belen v. Vega*, 99 N.M. 42, 43, 653 P.2d 873, 874 (Legislative increase in the amount of the homestead exemption may not be claimed against a judgment lien which attached prior to the effective date of the statutory amendment increasing the exemption). Nor is the heart of this case, as the parties have argued it, an issue of how to calculate or treat the amount of the lien or the value of the property according to § 522(f)(2)(A), as was the issue directly on appeal in *Sanders*. Rather, the question presented is whether court rulings that narrowly interpret the Code by reference to state statutes should override the language of the Code and clearly expressed Congressional policy.[17] This Court respectfully suggests that the answer to that question is "no".

---

**16.** As mentioned above, the *Sanders* court also explicitly ruled that any future appreciation in value over the exemption amount, either by inflation or pay down of a mortgage, accrues to the benefit of the judgment creditor rather than the debtor. 39 F.3d at 262. Nothing in the language of the statute as it read in 1978 compels that conclusion, and

that ruling would also seem to run counter to the Congressional intent to provide the debtor with exemptions to support the fresh start and a better economic future.

**17.** It cannot be the case that the federal bankruptcy law on exemptions is coextensive with state law concerning attachments. If nothing

In light of the foregoing arguments, the Motion to Avoid Lien will be granted in part. The lien will be avoided except to the extent of $6,886, which will remain as a lien on the property.

else, the different results that came about when Oklahoma changed its exemption statute belie that contention. *Compare Mediline*

*Service Corporation v. Jordana (In re Jordana),* 232 B.R. at 474 *with Coats v. Ogg (In re Coats),* 232 B.R. at 214.