**In re John C. KESTELLA, Debtor.**

**No. 97–60577.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Sept. 19, 2001.

---

Nicholas W. Jones, Delaware, OH, for creditor.

Charles D. Underwood, Columbus, OH, for debtor.

Anthony M. Heald, Delaware, OH, for creditor.

P. Jill Dailey, Cincinnati, OH, for creditor.

Steven D. Rowe, Columbus, OH, for creditor.

## MEMORANDUM OPINION AND ORDER

CHARLES M. CALDWELL, Bankruptcy Judge.

This Memorandum Opinion and Order constitutes the findings of fact and conclusions of law on the Application to Avoid Lien filed on behalf of John C. Kestella ("Debtor") and the Memorandum in Opposition filed on behalf of Marsha Kestella Level and her domestic relations counsel, Anthony M. Heald ("Claimants"). The dispute concerns the sum of more than $54,000.00 held in the Debtor's 401(K) Plan ("Plan") with his former employer, Applied Innovations, Inc. ("Applied").

The Claimants assert a lien on the Plan proceeds pursuant to a Judgment Entry–Decree of Divorce ("Judgment") entered on February 26, 1996, by the Delaware County Court of Common Pleas ("Divorce Court"). The Debtor seeks to avoid the Claimants' lien interests as impairing his exemption, pursuant to section 522(f)(1) of the United States Bankruptcy Code ("Code"). For the reasons detailed below, the Court has determined that the lien interests of the Claimants cannot be avoided.

The Debtor and the Claimant, Marsha Kestella Level ("Ms. Level"), were married on April 9, 1983, and had one child. During the marriage, the Debtor was employed by Applied as a senior salesperson, and Ms. Level was employed as an x-ray technologist with Riverside Methodist Hospital. On January 4, 1994, Ms. Level

filed a Complaint for Divorce, and what ensued was a lengthy, litigious and expensive divorce proceeding that culminated two years later in the Judgment and lien interests that are at issue in this case.

In its Judgment, the Divorce Court weighed the relative financial wherewithal of the parties and made findings regarding their respective financial conditions and needs in awarding spousal support. In performing this task, the Divorce Court relied upon section 3105.18 of the Ohio Revised Code that lists fourteen factors, such as age, income, and relative earning capacity, that should be considered in awarding spousal support. Specifically, it was found that Ms. Level had an annual income of $33,280.00 based upon her employment with Riverside Methodist Hospital.

A more complicated and significantly more affluent picture of the Debtor was painted. For example, it was found that between 1987 and 1994, the Debtor earned the sum of $1,412,545.00, and that during 1994 alone, the year when the divorce proceeding was commenced, the Debtor earned the sum of $331,614.00. The Divorce Court went on to note that the employment with Applied terminated on April 14, 1995, and that the Debtor was then currently employed by LaCroix Systems as an independent contractor, earning the sum of $3,000.00 per month.

The Divorce Court, however, expressed grave doubts about the accuracy of the Debtor's disclosure of his assets, and made references to the findings of a forensic accountant retained by Ms. Level. For example, the forensic accountant concluded that just for the year of 1994, there was no accounting in the Debtor's records for the sum of $121,612.04. The Divorce Court detailed in the Judgment that the Debtor transferred the sum of $50,000.00 in Swift Depository Notes (SDIs) to his brother, lost the sum of $45,000.00 gambling, and failed to disclose the receipt of $25,000.00 from Applied upon the cessation of his employment.

Based upon these factors and many others detailed in the Judgment, the Divorce Court constructed an equitable accounting and division of the assets of the Debtor and Ms. Level. The Divorce Court concluded that the sum of $24,403.46 should be paid to Ms. Level as an equalizing distribution. Ms. Level was awarded the marital home, with the Debtor obligated to pay the first and second mortgages. The Debtor was ordered to pay the sum of $15,000.00 for Ms. Level's attorney and accountant fees, child support in the amount of $530.00 per month, and was required to pay a debt to Discover Card. The Divorce Court even established a payment plan for the equalizing distribution, Ms. Level's professional fees, and arrearages under the temporary order at the rate of $500.00 per month, commencing in January 1996. The Debtor, on the other hand, was awarded considerable stock and joint venture holdings, as well the Plan proceeds, that as of March 11, 1995, had a value of $54,431.06.

A review of the Judgment indicates that the Divorce Court was also concerned with whether the Debtor would pay, and it was clear that there was significant frustration with the Debtor's numerous litigation tactics, that were viewed as increasing the legal and other professional costs. This concern was translated into a lien created in the Judgment to secure payment of the obligations imposed upon the Debtor, including attorney and accountant fees. The lien was attached to all property awarded to the Debtor, including the Plan. The Divorce Court concluded:

> The terms of said lien shall be that in the event that the Husband (Debtor) becomes 60 days delinquent in any of

the obligations set forth in this Paragraph, then all of said assets shall be liquidated and applied to said obligations in the following order: Discover debt, second mortgage, first mortgage, property settlement, any arrearages under the temporary order, attorney and accountant fees. This lien shall take the form of a 100% QDRO of the retirement benefits until said obligations are paid in full.

The Divorce Court's payment concerns proved correct. On July 10, 1997, Ms. Level filed a contempt motion for nonpayment, including failure to pay the first mortgage on the marital home and any of the monthly payments under the installment plan. On November 14, 1997, the Debtor filed the instant chapter 7 bankruptcy case, and claimed the Plan proceeds exempt. Obligations to the Claimants and the forensic accountant, pursuant to the Judgment, were scheduled in the total amount of $210,854.90. A Magistrate's Decision dated November 25, 1997, was issued in Ms. Level's Divorce Court contempt proceeding. The Magistrate found the Debtor in contempt of court and sentenced him to jail for nonpayment of all the obligations previously imposed. The Magistrate ordered the judicial lien enforced through the liquidation of certain assets, including the Plan, and provided that the jail sentence would be suspended if the Debtor cooperated with the liquidation of the assets, including the execution of a quit-claim deed.

On December 3, 1997, however, a notice of the bankruptcy filing and suggestion of stay was filed with the Divorce Court. Subsequently, a Complaint to Determine Dischargeability was filed on behalf of Ms. Level on February 17, 1998, in this Court. A timely pretrial statement was filed by the Debtor, but nothing was filed on behalf of Ms. Level. Five months after the due date for the pretrial statements, September 22, 1998, the Court entered an Order Dismissing Adversary Proceeding, based upon the failure of counsel to file a pretrial statement on behalf of Ms. Level. On July 19, 1999, the Debtor's bankruptcy case was closed subsequent to the entry of a discharge.

The Debtor subsequently sought on several occasions to access the Plan proceeds. Ultimately, on August 2, 1999, Applied filed a Motion for Clarification of Provision of Divorce Decree with the Divorce Court. This Motion prompted a second round of litigation in the Divorce Court, this time over access to the Plan proceeds. The Divorce Court ruled in a Magistrate's Decision and Amended Magistrate's Decision entered respectively on October 11, 2000, and November 1, 2000, that the judicial lien imposed as part of the Judgment remained enforceable, even though the personal obligations of the Debtor may have been discharged.

Specifically regarding the Plan, the Divorce Court required that Applied withhold and pay to Ms. Level the sum of $189,789.28 from the Plan, that apparently has substantially increased in value. This amount included the following obligations that the Debtor was required but failed to pay pursuant to the Judgment: Discover Card ($1,099.16); Fifth Third Second Mortgage ($19,500.00); Citicorp First Mortgage Payments Paid by Ms. Level ($20,504.53); Citicorp First Mortgage Balance ($109,282.13); Property Equalization ($24,403.46); and Attorney and Accountant Fees ($15,000.00). This Ruling prompted the Debtor to file with this Court a Motion to Reopen on October 27, 2000, and on November 29, 2000, the Court entered an Order of Reopening. This Order did not provide for the reappointment of trustee, but was for the sole purpose of the com-

mencement of the lien avoidance litigation that was filed on December 7, 2000.

■ As noted by one commentator, one of the most important policies behind the bankruptcy remedy is the provision of a "fresh start" to debtors, including the ability to claim exemptions and shield assets from creditor attachment. S. Wolf, *Divorce, Bankruptcy, and Metaphysics: Avoidance of Marital Liens Under Sec. 522(f) of the Bankruptcy Code*, 31 Fam. L.Q. 513 (1997). Indeed, the lien avoidance provisions of the Code were drafted in response to the practice of creditors who rush to the courthouse to obtain judicial liens immediately prior to filing. *Id.* at 520, citing H.R.Rep. No. 95–595, at 126–127, 1987, U.S.C.C.A.N., at 6087–88. This attempt to preserve the fresh start for debtors, however, proved to be a difficult proposition when it came to the interests of former spouses and children, and the policy considerations underlying state provisions that govern spousal and child support. *See Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991); S. Diehard, *The Interplay Between Bankruptcy and Divorce: Which Former Spouse Deserves the Fresh Start?,* 99 Com. L.Q. 192 (1994).

In 1994, Congress amended the lien avoidance provisions to specifically address liens that arise as the part of divorce and dissolution proceedings. Section 522(f)(1)(A)(i) of the Code currently provides:

Notwithstanding any waiver of exemptions, but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property *to the extent that such lien impairs an exemption to which the debtor would have been entitled* under subsection (b) of this section, if such lien is—

(A) *a judicial lien,* other than a judicial lien that secures a debt—

(I) to a spouse, former spouse, or child of the debtor, *for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement;* and ... (emphasis supplied)

■ With this change in the Code, the task of the courts faced with attempts to avoid judicial liens imposed as part of domestic relations proceedings, is to determine whether the provisions at issue constitute alimony, maintenance or support, without regard to how they may be labeled in the decree. *In re Lowe,* 250 B.R. 422, 424–426 (Bankr.M.D.Fla.2000); *In re Allen,* 217 B.R. 247, 249–250 (Bankr.S.D.Ill. 1998); *In re Cannon,* 243 B.R. 153, 155–156 (Bankr.S.D.Fla.2000), *vacated on other grounds,* 254 B.R. 773 (S.D.Fla.2000). Section 522(f) has even been used to preserve liens for attorney fees that arose in domestic relations proceedings. *In re Allen,* at 249–250. The factors that should be considered include:

a. the relative income, education and age of the parties at the time;

b. the number and age of children;

c. the amount of child support;

d. the probable need for support; and

e. whether the payments are intended as economic security as articulated by the state court.

*In re Lowe,* at 426.

■ In the instant case, this Court has concluded from a review of the Judgment that the Divorce Court intended to impose and did impose a judicial lien on certain assets awarded to the Debtor, including the Plan. Bankruptcy courts have

long recognized the authority of state divorce courts to impose judicial liens upon marital assets. *In re Markunes*, 86 B.R. 933, 935–936 (Bankr.S.D.Oh.1988); *In re Levi*, 183 B.R. 468, 471–472 (Bankr. N.D.Tx.1995). Whether this lien takes the form of a legally sufficient QDRO, as argued by the Debtor, is irrelevant. A QDRO is simply another, perhaps more efficacious means, to protect the interests of a former spouse by the conveyance of all or a portion of a 401(K) plan, rather than merely granting a judicial lien. *In re Hageman*, 260 B.R. 852, 856–858 (Bankr. S.D.Oh.2001). This Court agrees with the analysis of the Divorce Court that the issuance of the discharge is only relevant to whether the Debtor's personal obligations to Ms. Level are discharged, and does not affect the validity of the judicial lien imposed upon his assets. The fact that the Complaint to Determine Dischargeability was dismissed is of no consequence, as the discharge is not at issue.

As noted by the Divorce Court, there was a significant disparity in the income and earning potential of the Debtor and Ms. Level. The Divorce Court went so far as to create an equalizing distribution, and to make the Debtor responsible for the mortgage payments on the marital home that was awarded to Ms. Level and for the payment of a debt to Discover Card. The Debtor was obligated to pay $15,000.00 in attorney and accountant fees. The Debtor was required to pay current child support in the amount of $530.00 per month. As detailed above, the Divorce Court expressed concern with the Debtor's past actions of concealing assets, and doubted that he would voluntarily pay the obligations imposed in the Judgment.

Out of this concern, the Divorce Court imposed a judicial lien to secure payment of all the obligations to Ms. Level, including substantial attorney and accountant fees that were necessary to pursue the Debtor and compel payment. Based upon a review of the Judgment, given the income and asset disparity and significant difference in earning potential between the parties, this Court concludes that the judicial lien, in its entirety, is in the nature of support for Ms. Level and the child, and cannot be avoided pursuant to section 522(f)(1)(A)(i) of the Code. Accordingly, it is hereby **ORDERED** that the Application to Avoid Lien filed by the Debtor is **DENIED**.

It is further **ORDERED** that prior to the commencement of any action to collect the Plan proceeds, the Claimants shall file and serve upon all parties, including the case trustee and United States Trustee, a separate motion for modification of the automatic stay.

**IT IS SO ORDERED.**